ANTONIO LERMA, Special Adm'r of the Estate of Orlando Lerma, Deceased, *et al.*, Plaintiffs-Appellants, v. ROCKFORD BLACKTOP CONSTRUCTION COMPANY *et al.*, Defendants-Appellees.

Second District   Nos. 2—92—0962, 2—92—1234 cons.

Opinion filed July 1, 1993.—Modified on denial of
rehearing August 13, 1993.

Lawrence J. Ferolie and Frank A. Perrecone, both of Lawrence J. Ferolie & Associates, Ltd., of Rockford (Albert F. Ferolie, of counsel), for appellants.

Stephen R. Swofford and D. Kendall Griffith, both of Hinshaw & Culbertson, of Chicago, and John A. Sandberg, of Thomas & Hinshaw, Culbertson, of Rockford (Bruce L. Carmen, of counsel), for appellee Belvidere Park District.

Michael J. Chmiel, of Barrick, Switzer, Long, Balsley & Van Evera, of Rockford (Richard K. Van Evera, of counsel), for appellee Rockford Blacktop Construction Company.

JUSTICE COLWELL delivered the opinion of the court:

Plaintiffs appeal from orders of the Boone County circuit court dismissing their wrongful death actions against the Belvidere Park District (the Park District) and Rockford Blacktop Construction Company (Rockford Blacktop). In separate complaints, plaintiffs alleged negligence and willful and wanton misconduct on the part of the Park District and negligence on the part of Rockford Blacktop in the drowning deaths of decedents. The two cases have been consolidated for appeal. We affirm.

On May 12, 1991, at approximately 7 p.m., Orlando Lerma, age 11, and Adan Ramirez, age 14, entered the Kishwaukee River near a dam and drowned. Although accounts vary, a total of seven children may have been wading in the river and been pulled under by the current. The coroner's report and the jury inquest indicate that adults rescued five of the children. Plaintiffs' pleadings state only that the decedents drowned downstream of the dam while attempting to rescue another child who had also been playing in the river.

The incident occurred in Belvidere Park in Boone County where the Kishwaukee River flows through the park and is crossed by a dam. The State of Illinois owns the river and the dam. The Park District operates the dam under an agreement with the State. Under contract with the State, Rockford Blacktop was engaged in repair work on the dam in May 1991.

Plaintiffs alleged that unseen hazards in the river in the form of undercurrents or debris or both caused decedents' deaths. The Park District, by the terms of its agreement with the State, controlled the flow of river water going over the dam or through its conduits. Plaintiffs maintained that operation of the dam's conduits altered the natural flow of the river, creating dangerous undercurrents and undertows that were not visible from the surface of the water and that were capable of causing drowning by dragging a person under the water. When Blacktop began its work, it opened the conduits to prevent the water from flowing over the top of the dam. According to plaintiffs, the entire flow of the river was forced downstream through the conduits, creating dangerous undercurrents and undertows downstream from and near the dam. Plaintiffs also asserted that the river's bottom was cluttered with metal and concrete debris from Rockford Blacktop's construction project which could not be seen from the surface and in which a person could become entangled and drown.

Plaintiffs alleged that both the Park District and Rockford Blacktop knew of the hazards and failed either to provide adequate warning of the dangers to people entering the river or to prohibit entry all together in the vicinity of the dam. Moreover, the Park District was "in the business" of providing recreation and, according to the pleadings, "allowed and encouraged" park-goers to fish, boat, walk, wade, and swim in the river.

Both defendant Park District and defendant Rockford Blacktop filed motions to dismiss pursuant to section 2—615 of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—615). Defendant Park District's first argument, that the complaint failed to allege that the Park District owned or controlled the river, dam, or construction project at the time of the occurrence and that, therefore, the Park District owed no legal duty to plaintiffs, was rendered moot by plaintiffs' amendments to the complaint, which alleged that the river and dam, while owned by the State at the time of the occurrence, were either "possessed, maintained, controlled or operated" by the Park District and continued to be so after the construction project began. In the alternative, plaintiffs' amendments alleged that the Park District used the river and dam as part of its intended recreational purpose and

such use was reasonably incident to the Park District's use of its adjacent park.

Defendant Park District's remaining arguments in its motion to dismiss were that the danger of drowning while swimming in a river near a dam is an open and obvious condition, for which no duty should be extended to the minor decedents; that plaintiffs' negligent counts are barred by the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1991, ch. 85, par. 3—106); and that plaintiffs' willful and wanton misconduct counts failed to state a cause of action under section 1—210 of the Tort Immunity Act (Ill. Rev. Stat. 1991, ch. 85, par. 1—210).

Plaintiffs countered that the negligence counts were not barred by the Tort Immunity Act. Plaintiffs maintained that the Tort Immunity Act did not apply to conduct of the Park District involving the river and dam, because the Park District did not own the river and dam. Plaintiffs further argued that the amended complaint sufficiently alleged willful and wanton conduct based on the definition stated in the Tort Immunity Act.

Defendant Rockford Blacktop echoed the Park District's argument that plaintiffs' complaint failed to state a cause of action because Illinois law holds that the danger of drowning while swimming in a river near a dam is an open and obvious condition for which no duty should be extended from defendants to plaintiffs' decedents. Plaintiffs later amended their counts against Rockford Blacktop to include allegations that Rockford Blacktop, as general contractor for the construction project, owed a duty to decedents to keep the construction site and its vicinity safe and that Rockford Blacktop was required by its contract with the State to post a warning sign in the location where the children were playing and the drowning occurred.

The question on appeal is whether plaintiffs' pleadings state a cause of action. The trial court determined that they did not and granted both defendants' motions to dismiss. We affirm.

When considering the sufficiency of a complaint dismissed pursuant to a section 2—615 motion, the reviewing court must determine whether the allegations in the complaint, when construed in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 505.) If the complaint does not allege facts necessary to state a cause of action, the deficiency may not be cured by liberal construction. (*Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 287.) To avoid dismissal for failure to state a cause of action, the complaint must set out suffi-

ciently every essential fact to be proved. (*In re Beatty* (1987), 118 Ill. 2d 489, 499.) Conclusions of law or fact unsupported by specific factual allegations are not taken as true. *Burdinie*, 139 Ill. 2d at 505.

■■ To plead a sufficient cause of action in negligence, the plaintiff must allege the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140.) Where, as here, the defendant is a local public entity (see Ill. Rev. Stat. 1991, ch. 85, par. 1—206), the plaintiff must also plead that the proximate cause of the plaintiff's injury was the governmental entity's willful and wanton conduct, if the injury is based on the existence of a condition of public property used for recreational purposes. Ill. Rev. Stat. 1991, ch. 85, par. 3—106.

■■ The definition of "public property" is found in section 3—106 of the Tort Immunity Act:

" '[P]roperty of a local public entity' and 'public property' mean real or personal property owned or leased by a local public entity, but do not include easements, encroachments and other property that are located on its property but that it does not own, possess or lease." (Ill. Rev. Stat. 1991, ch. 85, par. 3—101.)

Plaintiffs allege that decedents were engaged in recreational activities in the Kishwaukee River at the time they drowned but argue that because the river is owned by the State of Illinois and because the Park District does not have a formal lease with the State, the river is not "public property" as defined by section 3—101.

Section 3—101 is ambiguous on its face. On the one hand, "public property" must be "owned" or "leased"; on the other hand, certain property, which may or may not be owned by another entity, is also public property if it is merely in the possession of the local public entity on whose property it is located.

In construing a statute, no portion should be interpreted so as to be rendered meaningless (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 362-63), and language is to be given the fullest rather than narrowest possible meaning to which it is susceptible. *Lake County Board of Revenue v. Property Tax Appeal Board* (1988), 119 Ill. 2d 419, 423.

Furthermore, a court must ascertain and give effect to the legislature's intent in enacting the statute. (*Kirwan v. Welch* (1989), 133 Ill. 2d 163, 165.) A statute capable of two interpretations should be given that which is reasonable and which will not produce absurd, unjust or unreasonable results that the legislature could not have intended.

(*Mulligan v. Joliet Regional Port District* (1988), 123 Ill. 2d 303, 312-13; *People v. Williams* (1987), 119 Ill. 2d 24, 28.) An interpretation that renders a statute valid is always presumed to have been intended by the legislature. *Harris,* 111 Ill. 2d at 363.

Plaintiffs contend that because the Tort Immunity Act is in derogation of the common-law action against local public entities, it must be strictly construed against the public entity involved. (*Aikens v. Morris* (1991), 145 Ill. 2d 273, 278.) However, plaintiffs' construal of section 3—101 produces an unreasonable result. Under plaintiffs' analysis, a party who does not own the property or does not have a formal lease will be liable for simple negligence, while a party with the greater dominion over property enjoyed by a landowner or lessee is liable only for willful and wanton misconduct. We do not believe the legislature intended this unjust disparity.

■ We believe the intent of the legislature here is to include all property owned, leased, or possessed by the public entity, including any encroachment, easement, or property of others which is located on its property. (See *Kirnbauer v. Cook County Forest Preserve District* (1991), 215 Ill. App. 3d 1013, 1021-22 ("public property" within the meaning of the statute includes an easement possessed by the public entity).) The Park District maintained all the incidents of a lease—possession, control, maintenance, and repair—albeit without the formality of a written lease.

The Park District exercised sufficient dominion over the river and dam to be liable for conduct related to the condition of that property. However, because we find that the river and dam fall under the statute's definition of "public property," we hold that the Park District is liable only for willful and wanton conduct related to the condition of the river and dam. Plaintiffs' negligence counts against the Park District are, therefore, barred by the Tort Immunity Act.

■ Plaintiffs contend that their complaint adequately alleges willful and wanton misconduct on the part of the Park District. Section 1—210 of the Tort Immunity Act provides:

" 'Willful and wanton conduct' as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." Ill. Rev. Stat. 1991, ch. 85, par. 1—210.

Plaintiffs allege that, in spite of the Park District's knowledge of the hidden undercurrents and debris and the dangers they presented, it failed to warn of the hazards or to prohibit or to restrict entry into the river at the hazardous locations. This court has held that to plead

a cause of action sufficiently for willful and wanton conduct, a plaintiff must allege that a defendant engaged in a *course of action* that proximately caused the injury. *Benhart v. Rockford Park District* (1991), 218 Ill. App. 3d 554, 559.

In *Benhart*, this court determined that the plaintiff's factual allegations were sufficient to establish a willful and wanton cause of action. In that case, the plaintiff lost her footing and fell when she was struck by a wave created by a wave machine in a pool operated by a public entity. The defendant park district had removed certain nonslip strips from the bottom of the pool. The plaintiff alleged that the defendant consciously disregarded its own knowledge that the protection these strips previously provided would be absent once it removed them. This court held that plaintiff's allegations represented a course of action that proximately caused plaintiff's injuries.

The distinction between the park district's conduct in *Benhart* and defendant Park District's conduct is one of action versus nonaction, commission as opposed to omission. Defendant Park District's failure to act upon its alleged knowledge of dangers does not, we believe, demonstrate a course of action showing deliberate intention to cause harm or conscious disregard for the safety of others.

Alternatively, plaintiffs allege that a course of action can be found in the Park District's "invitation" to park-goers to enter the river for recreational purposes. Plaintiffs' attempt to establish a duty on the part of defendants by likening decedents' status to that of a business invitee is unpersuasive. The common-law labels of trespasser, licensee, and invitee, as they relate to an injured child's status, are no longer relevant in assessing liability. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 285-86; *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 625.) It is therefore not significant if the Park District had invited park-goers to use the river for recreational purposes.

Because the facts as pleaded fail to state a cause of action, we affirm the trial court's dismissal of plaintiffs' allegations of willful and wanton misconduct on the part of defendant Park District.

■■ Plaintiffs allege that defendant Rockford Blacktop owed decedents a duty of care because Rockford Blacktop was the general contractor of the dam repair project. It is true that a general contractor in control of the premises has a duty to keep its construction site safe and to keep itself informed as to its safety. (*Ross v. Aryan International, Inc.* (1991), 219 Ill. App. 3d 634, 651.) However, the nature of the danger is dispositive, and where, as here, the danger is open and obvious, no duty exists.

The customary principles of ordinary negligence must be applied to determine the liability of owners or parties in possession or control of premises upon which a child is injured. (*Cope v. Doe*, 102 Ill. 2d at 286, citing *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326.) Foreseeability of harm to the child is the test for liability. (*Kahn*, 5 Ill. 2d at 625.) A duty that would not be imposed under ordinary negligence will be imposed where an owner or party in possession or control of premises " 'knows or should know that children frequent the premises *and* if the cause of the child's injury was a *dangerous* condition on the premises.' " (Emphasis in original.) (*Cope v. Doe*, 102 Ill. 2d at 286, quoting *Corcoran*, 73 Ill. 2d at 326.) A dangerous condition is one which is likely to cause injury to children generally who, by reason of their age and immaturity, would not be expected to comprehend and avoid the attendant risks. *Cope v. Doe*, 102 Ill. 2d at 286.

It is well settled that if the condition complained of presents obvious risks that children would be expected to avoid, there is no duty to remedy that condition. (*Cope v. Doe*, 102 Ill. 2d at 286.) The rationale for the obvious risk rule is that "since children are expected to avoid dangers which are obvious, there is no reasonably foreseeable risk of harm. The law then is that foreseeability of harm to the child is the test for assessing liability; but there can be no recovery for injuries caused by a danger found to be obvious." *Cope v. Doe*, 102 Ill. 2d at 286; *Old Second National Bank v. Aurora Township* (1987), 156 Ill. App. 3d 62, 68.

The Illinois Supreme Court has recognized that one of the obvious risks that children would generally be expected to appreciate and avoid is water:

> " 'There are many dangers, such as those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large.' " (Emphasis omitted.) (*Cope v. Doe*, 102 Ill. 2d at 286-87, quoting Restatement (Second) of Torts §339, Comment *j*, at 203 (1965).)

Circumstances under which open bodies of water have been found by Illinois courts to present obvious risks include playing on a partially frozen retention pond located in an apartment complex (*Cope v. Doe* (1984), 102 Ill. 2d 278; see also *Weber v. Village of Carol Stream* (1984), 129 Ill. App. 3d 628); drowning in a partially frozen man-made duck pond (*Wingate v. Camelot Swim Club, Inc.* (1990), 193 Ill. App. 3d 963); wading in a retention pond in which the depth of the water varied (*Prince v. Wolf* (1981), 93 Ill. App. 3d 505); inner-tubing in a floodwater ditch (*Old Second National Bank*, 156 Ill. App. 3d at 62);

falling into a retention pond surrounded by prairie grass (*Stevens v. Riley* (1991), 219 Ill. App. 3d 823); and wading on a flooded sidewalk on the bank of a river (*Christon v. Kankakee Valley Boat Club* (1987), 152 Ill. App. 3d 202). In each of these cases, the defendant landowner was found not to owe a duty to a child old enough to be at large to protect against the dangers bodies of water pose.

Plaintiffs emphasize that the dangers decedents encountered—hazardous undercurrents, undertows, and debris—were subsurface and could not be appreciated or anticipated from the shore or even by entering the water. Plaintiffs cite *Pasierb v. Hanover Park Park District* (1981), 103 Ill. App. 3d 806, for support. In *Pasierb*, a child drowned after falling through a frozen pond when the surface was obscured by a layer of snow. Plaintiffs maintain that the concealed hazard in that instance was the ice on the pond. According to our reading of the case, the hidden dangerous condition on the land was the water itself. The court noted that it was impossible to discern the location of the creek and added "[w]e believe the risks involved in a completely concealed creek in a park are not the type 'which children generally would be expected to recognize and appreciate.' " *Pasierb*, 103 Ill. App. 3d at 809, quoting *Corcoran*, 73 Ill. 2d at 328.

Apart from swimming pools, which our courts and the legislature have traditionally regarded differently from other bodies of water (*Cope*, 102 Ill. 2d at 288; see Ill. Rev. Stat. 1991, ch. 111½, par. 1201 *et seq.*), bodies of water are deemed to signal obvious danger to persons old enough to be at large precisely because of their unknown surface or subsurface elements. As this court has previously stated, " '[c]learly, any body of water has the potential to contribute to a drowning. *** [T]he risk of drowning is one which children generally[ ] would be expected to recognize.' " *Old Second National Bank*, 156 Ill. App. 3d at 69, quoting *Prince v. Wolf* (1981), 93 Ill. App. 3d 505, 509.

Plaintiffs attempt to distinguish the *Cope* line of cases by arguing that the instant case involved not a naturally occurring condition but one that was caused by the artificial creation of undertows or accumulated construction debris or by a combination of the two. The touchstone of liability in the line of cases spawned by *Kahn v. James Burton Co.* is not the distinction between natural or artificial but is instead the foreseeability of harm to children. (*Pasierb*, 103 Ill. App. 3d at 809.) We reiterate that it is a body of water *per se* that presents an obvious risk of drowning, not its attendant conditions, whether surface or subsurface, artificial or natural.

Plaintiffs further argue that the *Cope* line of cases has been modified by recent supreme court decisions holding that, despite a plaintiff's knowledge of an obvious danger, owners and possessors of land may be held liable for injuries resulting from such dangers. The " 'obviousness' of a condition or the fact that the injured party may have been in some sense 'aware' of it may not always serve as adequate warning of the condition and of the consequences of encountering it." (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 148-49.) The injured party in *Ward* was a customer who walked into a concrete post as he left a K mart store carrying a large mirror. The court found that even though some conditions may be "known" and "obvious," defendant's duty may extend to such situations where the defendant can anticipate that a plaintiff may, whether from distraction or forgetfulness, fail to avoid the risk. *Ward*, 136 Ill. 2d at 156; see also *Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430 (a worker exiting a portable toilet may be distracted from a hole because of objects falling from above); *American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14 (a worker may be distracted from overhead power lines by the need to watch his feet on a narrow walk rail).

The *Ward* court stated that the relevant inquiry is "whether the defendant should reasonably anticipate injury to those entrants on his premises who are generally exercising reasonable care for their own safety, but who may reasonably be expected to be distracted, as when carrying large bundles, or forgetful of the condition after having momentarily encountered it." *Ward*, 136 Ill. 2d at 152.

We do not believe this analysis applies to the risk of drowning in a body of water. A person who is generally exercising reasonable care for his own safety either does not enter a body of water for recreation, or, once in it, does not drown because he has become distracted or forgetful of the otherwise obvious danger. We believe it is not reasonably foreseeable to an owner or occupier of land that a person entering a body of water for recreation would somehow be distracted from the fact that he is in the water. We reiterate the holding of the *Cope* line of cases that a body of water is not a condition against which an owner or possessor of land must take precautions, because all persons old enough to be at large are expected to appreciate and avoid it.

We also find unpersuasive plaintiffs' allegation that Rockford Blacktop owed a duty to decedents based on its contract with the State. The State contract called for a sign to be posted warning of hazardous currents and warning against entry into the spillway area.

Plaintiffs argue that this provision of defendant's contract created a duty to warn decedents and that defendant's alleged failure to erect the sign was a breach of that duty.

The scope of a defendant's duty is dependent on the terms of the contract. (*Perkaus v. Chicago Catholic High School Athletic League* (1986), 140 Ill. App. 3d 127, 134, citing *Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 482.) The contract in this case called for the installation of a single warning sign "in accordance with the plans and the Standard Specifications for Traffic Control Items," to be located as indicated on the plans and as directed by the engineer. The sign was to read: "WARNING, Hazardous Currents Present, DO NOT Enter Spillway Area, Ill [*sic*] Div. of Water Resources." It was to be posted 250 feet upstream of the dam. The sign was to be placed on the river's levee and angled to face the river.

The Department of Transportation's specifications imply to us that the sign was intended to warn approaching water traffic of the dangers posed by the construction work in the spillway area. Plaintiffs do not allege that decedents approached the dam via the river from 250 feet upstream. Rather, plaintiffs argue, without citing legal authority, that because decedents drowned in the spillway area, they were among the intended class of persons to be protected by the warning sign and that defendant, therefore, owed them a duty to erect the sign. We believe that, under the facts as alleged, whether the sign was actually installed is immaterial; the specifications for the sign absolve Rockford Blacktop from any duty to decedents based on its contract with the State.

For the above reasons, we affirm the orders of the circuit court of Boone County dismissing plaintiffs' complaints against Belvidere Park District and Rockford Blacktop Construction Company for failure to state a cause of action.

Affirmed.

UNVERZAGT and WOODWARD, JJ., concur.