LAWRENCE TORF *et al.*, Indiv. and as Special Co-adm'rs of the Estate of Ryan Torf, Deceased, Plaintiffs-Appellants, v. COMMONWEALTH EDISON *et al.*, Defendants-Appellees.—RUTH ENDICOTT, Indiv. and as Special Adm'r of the Estate of Davis Endicott, Deceased, Plaintiffs-Appellants, v. COMMONWEALTH EDISON *et al.*, Defendants-Appellees.

Second District   Nos. 2—93—1467, 2—94—0108 cons.

Opinion filed December 21, 1994.

Steven J. Seidman and Barry A. Spevack, both of Monico, Pavich & Spevack, of Chicago, for appellants.

Thomas H. Fegan, John W. Bell, William A. Geiser, and Mindy Kallus, all of Johnson & Bell, Ltd., of Chicago, for appellee Commonwealth Edison.

Michael K. Noonan, of Sullivan, Smith, Hauser & Noonan, Ltd., of Waukegan, for appellee City of Waukegan.

JUSTICE BOWMAN delivered the opinion of the court:

In separate actions the plaintiffs sued Commonwealth Edison (Edison) and the City of Waukegan (the City). Each complaint alleged that plaintiffs' decedent had drowned in Lake Michigan after being unable to escape swirling currents created by Commonwealth Edison's generating plant. In each cause, the trial court granted defendants' motions for judgment on the pleadings. Plaintiffs appealed, contending that the court erred in finding that the risk of drowning in Lake Michigan was an open and obvious danger as a matter of law. On its own motion, this court consolidated the appeals.

In cause No. 2—93—1467, the plaintiffs are Lawrence Torf and Lois Torf, individually and as the special co-administrators of the estate of their deceased son, Ryan Torf. Their complaint alleges that on July 14, 1991, Ryan Torf, a minor, drowned in a beach area of the City near Edison's power plant.

In cause No. 2—94—0108, the plaintiff is Ruth Endicott, individually and as the special administrator of the estate of her deceased husband, David Endicott. Her complaint alleges that on March 10,

1991, her husband drowned while swimming in the beach area near the power plant.

In other respects, the allegations of the complaints are similar if not identical. The complaints allege that defendant Edison owned and operated a power plant, pier, and beach area in the City. The City jointly maintained and controlled the beach area with Edison.

To operate the plant, Edison drew in lake water through an intake channel. It then discharged the water back into the lake through a separate channel. Edison and the City knew that fishermen used the pier, beach area, and waterways by the plant. In fact, Edison and the City encouraged such use by posting a sign advertising, "GOOD FISHING! This Recreational Facility is provided and maintained for public use by COMMONWEALTH EDISON COMPANY in cooperation with the City of Waukegan."

According to plaintiffs, Edison and the City also knew that the power plant's "torrential discharge" of warm water into the colder waters of Lake Michigan created "severely [sic], strong, dangerous, and turbulent currents including but not limited to dangerous undercurrents." These currents had caused drownings in July 1988, August 1988, and September 1990, and had caused a boat to capsize in September 1988. The complaints allege that Edison and the City were aware of these drownings.

The complaints further allege that in spite of this knowledge Edison and the City continued to solicit public use of the shoreline for recreational purposes. However, neither defendant warned the public about the dangerous conditions caused by the currents, and neither took steps to rectify the conditions in the area.

In each case, defendants filed motions for judgment on the pleadings, contending that the danger of drowning in Lake Michigan was open and obvious. (In No. 2—94—0108, Edison's motion was styled a motion to strike pursuant to section 2—615(a) of the Code of Civil Procedure (735 ILCS 5/2—615(a) (West 1992)). Under these facts, the distinction is of no practical significance. The issue in either case is the same.) The trial court agreed and granted the motions. Plaintiffs perfected their appeals.

In both consolidated cases, plaintiffs contend that the court erroneously applied the open and obvious danger doctrine to their cases. Plaintiffs acknowledge that generally the danger of drowning in a body of water is considered an open and obvious risk which both minors and adults should be expected to be able to appreciate and avoid. (See *Cope v. Doe* (1984), 102 Ill. 2d 278; *Lerma v. Rockford Blacktop Construction Co.* (1993), 247 Ill. App. 3d 567.) Plaintiffs maintain, however, that the rule does not apply in this case because

Edison intentionally increased the risk to persons entering the lake. Plaintiffs contend that Edison's discharge of warm water into the lake created strong currents which in turn increased the risk beyond that which a person swimming in the lake would normally be expected to encounter.

We note that most of the reported cases deal with the duty owed to a child. Although one of the decedents in these consolidated cases was an adult, a similar analysis applies. Certainly, if a risk is open and obvious to a child, it should be open and obvious to an adult as well.

Defendants respond that the danger of being trapped by dangerous and unknown currents is precisely the reason that water is considered to be an open and obvious danger. Defendants seek to distinguish plaintiffs' cases, which primarily involve "foreign objects," such as boulders, tree stumps or sunken barges, submerged in the water. According to defendants, the risk in this case, dangerous currents, is a risk inherent in the nature of the water itself and, under the open and obvious danger rule, defendants cannot be liable for injuries caused by such inherent dangers.

■ Initially, plaintiffs do not dispute that the Recreational Use of Land and Water Areas Act (745 ILCS 65/1 *et seq.* (West 1992)) applies to this case and, thus, Edison is liable only for wilful and wanton conduct. (*Turgeon v. Commonwealth Edison Co.* (1994), 258 Ill. App. 3d 234, 247-48.) The same standard applies to the City. 745 ILCS 10/3—106 (West 1992); *Lerma,* 247 Ill. App. 3d at 571.

■ Under negligence principles, the test for liability is the foreseeability of harm to the child. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 625.) A duty that would not ordinarily be imposed will be imposed if the owner knows that children frequent the premises and if the cause of the child's injury was a dangerous condition of the premises. (*Cope,* 102 Ill. 2d at 286; *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326.) A dangerous condition is one which is likely to cause injury to children who, by reason of their age and immaturity, would not be expected to comprehend and avoid the attendant risks. *Cope,* 102 Ill. 2d at 286; *Lerma,* 247 Ill. App. 3d at 574.

If the condition complained of presents obvious risks that children would be expected to avoid, there is no duty to remedy that condition. (*Cope,* 102 Ill. 2d at 286.) Water is one such danger that children are expected to appreciate and avoid:

> "There are many dangers, such as those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large." Restatement (Second) of

Torts § 339, Comment *j*, at 203 (1965), quoted in *Cope*, 102 Ill. 2d at 286-87.

In *Lerma*, this court rejected the argument that the creation of dangerous undertows could be a basis for liability, stating that "bodies of water are deemed to signal obvious danger to persons old enough to be at large precisely because of their unknown surface or subsurface elements." (*Lerma*, 247 Ill. App. 3d at 575.) Similarly, the fact that the undercurrents thus created were "artificial" rather than "natural" was not significant in the duty analysis. "The touchstone of liability in the line of cases spawned by *Kahn v. James Burton Co.* is not the distinction between natural or artificial but is instead the foreseeability of harm to children." *Lerma*, 247 Ill. App. 3d at 575.

In *Lerma*, plaintiffs' decedents drowned while playing in a river downstream from a dam. Plaintiffs alleged that, in the course of performing construction work at the site, defendant had opened the dam's conduits, thus altering the river's natural flow. (*Lerma*, 247 Ill. App. 3d at 569.) We noted that "bodies of water are deemed to signal obvious danger to persons old enough to be at large precisely because of their unknown surface or subsurface elements" (247 Ill. App. 3d at 575), and that the presence of the dam should have alerted the decedents to the possibility of dangerous undercurrents.

Plaintiffs attempt to distinguish *Lerma* on the basis that, unlike a dam, the purpose of a power station is not to alter the natural flow of the water. Apparently plaintiffs contend that their decedents would not necessarily have appreciated the fact that the power plant might be altering the lake's natural currents by discharging warm water into the lake. There may well be some hypothetical situation in which a property owner unexpectedly created abnormally dangerous subsurface currents. In such a case, it would be possible to conclude that the landowner had greatly increased the risks normally associated with swimming in a body of water. Since the rationale for the open and obvious danger rule is the ability of the potential plaintiff to assess the risk, if the artificial currents were truly invisible from the surface, liability might attach for unexpectedly increasing the risk. However, if a party simply churns the water at the surface, the danger would be open and obvious. See *Old Second National Bank v. Aurora Township* (1987), 156 Ill. App. 3d 62, 69-70 (fast-moving water in flooded spillway "could only have made the risk more, not less, obvious").

■ In the instant case, plaintiffs' complaints simply fail to allege that the dangers associated with Edison's discharge of warm water into the lake were not apparent from the surface. The court should

grant a motion for judgment on the pleadings only when plaintiff's complaint is legally insufficient such that plaintiff can prove no set of facts which would warrant relief. The court must accept as true all well-pleaded facts in the complaint. (*Abbott-Interfast Corp. v. Harkabus* (1993), 250 Ill. App. 3d 13, 16.) However, the court must disregard conclusional allegations. *Bank & Trust Co. v. Arnold N. May Builders, Inc.* (1980), 90 Ill. App. 3d 454, 456-57.

The critical allegations of both complaints are identical except for the relevant dates:

"7. On and before March 10, 1991, COMMONWEALTH EDISON COMPANY through its agents, servants and employees had actual knowledge of severely, [*sic*] strong, dangerous, and turbulent currents (including *but not limited to* dangerous undercurrents) in the waterways which were specifically rapid and strong when the generating units at the power station were operating.

8. On and before March 10, 1991, COMMONWEALTH EDISON COMPANY through its agents, servants and employees had actual knowledge of severely dangerous, turbulent and choppy rapid-like waters which form when the warm, strong discharge waters from the power plant meet the cold lake waves.

9. All of these conditions produced by the power generating plant were latent and not known by decedent." (Emphasis added.)

Paragraph 7 specifically alleges that the dangerous effects of Edison's power plant were *not* limited to undercurrents. Paragraph 8 specifically alleges that the waters were "choppy" and "rapid-like," adjectives which are normally associated with the surface of water. (See Webster's Ninth New Collegiate Dictionary 237, 975 (1990).) It is difficult to conceive of a situation in which "severely dangerous, turbulent and choppy rapid-like waters" existed beneath the surface while the surface remained completely placid. Furthermore, the very presence of the power plant and the discharge channel should have alerted decedents that conditions in the lake were less than ideal. In light of these considerations, the conclusional allegation in paragraph 9 that the defects were latent must be disregarded in favor of the specific factual allegations of paragraphs 7 and 8. These allegations demonstrate that any increased risk posed by the discharge channel was open and obvious.

Nor are we persuaded that the presence of the "GOOD FISHING!" sign drew the decedents into the water by impliedly warranting that the water was safe for swimming. It is a matter of common knowledge that fishermen often fish in waters which are unsuitable for swimming.

Plaintiffs further contend, however, that the supreme court mod-

ified the nearly absolute rule of *Cope* in *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132. In *Ward*, the supreme court held that a landowner may be liable for an injury caused by a dangerous condition of his property despite the obvious nature of the dangerous condition if the landowner could reasonably anticipate that its customer might be distracted or otherwise inattentive. *Ward*, 136 Ill. 2d at 151-52.

The *Lerma* court rejected a similar argument, stating:

> "We do not believe this analysis applies to the risk of drowning in a body of water. A person who is generally exercising reasonable care for his own safety either does not enter a body of water for recreation, or, once in it, does not drown because he has become distracted or forgetful of the otherwise obvious danger. We believe it is not reasonably foreseeable to an owner or occupier of land that a person entering a body of water for recreation would somehow be distracted from the fact that he is in the water." (*Lerma*, 247 Ill. App. 3d at 576.)

The authority from other jurisdictions which plaintiffs cite does not persuade us to reconsider *Lerma*.

For the foregoing reasons, the judgments of the circuit court are affirmed.

Affirmed.

DOYLE and COLWELL, JJ., concur.