MARY DiMARCO, Plaintiff-Appellant and Cross-Appellee, v. THE CITY OF CHICAGO, Defendant-Appellee and Cross-Appellant.

First District (4th Division)   No. 1—94—1827

Opinion filed February 22, 1996.

Michael W. Rathsack and Robert J. Napleton, both of Chicago, for appellant.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal,

Benna Ruth Solomon, and John H. Erlich, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE THEIS delivered the opinion of the court:

The plaintiff, Mary DiMarco (DiMarco), brought a negligence action against the City of Chicago (City) to recover for injuries sustained after tripping and falling on a curb in Chicago. In response to a special interrogatory, the jury found that the City did not have constructive notice of the defect in the curb. The jury also awarded the plaintiff $2,767,581.35. Ultimately, the trial court entered a judgment notwithstanding the verdict for the City, concluding that the jury's response to the special interrogatory was inconsistent with the general verdict and controlled it. The court determined that the plaintiff failed to prove that the City had actual or constructive notice of the alleged defect as required by section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act). (See 745 ILCS 10/3—102(a) (West 1994).) We note that the plaintiff concedes that she did not offer any proof of actual notice. On appeal, the plaintiff argues that the special interrogatory response was not inconsistent with the general verdict. Specifically, she maintains that certain provisions of the Tort Immunity Act operate to remove her cause of action from the scope of the Act and, therefore, the notice requirement contained in section 3—102(a) does not apply. Alternatively, she maintains that the jury's response to the interrogatory was against the manifest weight of the evidence. For the reasons that follow, we conclude that the plaintiff's cause of action fell within the scope of the Tort Immunity Act and therefore the issue of notice contained in the special interrogatory controlled the general verdict. We further determine that the jury's response to the interrogatory was not against the manifest weight of the evidence. Consequently, we affirm the judgment for the City.

At trial, the plaintiff testified that on April 17, 1989, she fell while attempting to enter the passenger side of a parked car located at 9825 South Avenue L in Chicago. The plaintiff further stated that as a result of her fall she suffered a broken ankle which eventually required amputation. She testified that an uneven section of the curb that protruded upwards caused her fall. Additional testimony and exhibits at trial indicated that the section of the curb where the plaintiff fell was raised approximately two inches higher than the rest of the curb.

Several witnesses gave testimony indicating that the City repaired the curb in June of 1989, after the plaintiff's fall. Other testimony indicated that a contractor hired by the State of Illinois repaired the curb, not the City.

At trial, the parties agreed that the Cook County highway department constructed Avenue L between 95th and 100th Streets during the 1930s and 1940s. They further agreed that the State of Illinois and the City entered into an agreement for the maintenance of municipal streets (Agreement), whereby the City agreed "to operate and maintain" certain portions of Avenue L for compensation. However, nothing in the Agreement expressly referred to "curbs," and the parties disagreed about whether the Agreement pertained to curbs as well as the surface of the road. Both parties presented conflicting evidence concerning whether the scope of the Agreement extended to curbs.

Following closing arguments, the court instructed the jury. Among the instructions given was the "Court's Instruction No. 1," which asked whether the defendant was "negligent" in one or more of the following respects: (a) by allowing the curb to become uneven, (b) by permitting the curb to become uneven, even though the defendant knew, or in the exercise of ordinary care should have known, that the condition existed and presented a tripping hazard, (c) by creating a two-inch height discrepancy in the curb prior to April 18, 1989, and (d) by failing to repair the curb section in question pursuant to the terms of the agreement for the maintenance of municipal streets.

Upon the defendant's request, the court also gave the jury special interrogatory No. 1 (Interrogatory 1), which asked whether the City had the "responsibility for maintaining the curb in front of 9823-25 S. Avenue L in Chicago." Ultimately the jury responded affirmatively and the parties do not contest this finding on appeal. We note that Interrogatory 1 did not ask the jury to identify the grounds on which it found that the City had the responsibility for maintaining the curb.

Additionally, over the plaintiff's objection and at the defendant's request, the trial court gave the jury special interrogatory No. 2 (Interrogatory 2), which asked:

> "Did the CITY OF CHICAGO have constructive notice of a condition that was not reasonably safe in reasonably adequate time prior to MARY DIMARCO's injury to remedy or protect against the condition?"

As part of its defense at trial, the City maintained that it could not be held liable for the plaintiff's injuries because it did not have actual or constructive notice of the defective curb as required by section 3—102(a) of the Tort Immunity Act. The trial court agreed that the plaintiff could not prevail unless she proved constructive notice, noting that the plaintiff conceded that she failed to offer proof of actual notice.

The jury responded negatively to Interrogatory 2 and rendered a verdict for the plaintiff. The court then entered a judgment notwithstanding the verdict for the City. The plaintiff now appeals, arguing that Interrogatory 2 did not control the general verdict and, therefore, we should reverse the trial court's order.

■ We review the court's decision to give Interrogatory 2 *de novo*. (735 ILCS 5/2—1108 (West 1994).) We recognize that when a special interrogatory does not cover all of the issues submitted to the jury and a reasonable hypothesis exists to construe the general verdict consistent with the interrogatory, it will not control the outcome of the case. (*LaPook v. City of Chicago* (1991), 211 Ill. App. 3d 856, 570 N.E.2d 708.) However, in construing the meaning of a special interrogatory, courts must examine it in light of the jury instructions to determine how the jury understood the interrogatory. *LaPook*, 211 Ill. App. 3d at 866, 570 N.E.2d at 713; *Vuletich v. Bolgla* (1980), 85 Ill. App. 3d 810, 407 N.E.2d 566.

A special interrogatory is properly allowed when it concerns a material question of fact. (*Meister v. Henson* (1993), 253 Ill. App. 3d 619, 625 N.E.2d 404.) The phrase "material question *** of fact" refers to an "ultimate fact or facts" upon which the rights of the parties depend. (*Vulcan Materials Co. v. Holzhauer* (1992), 234 Ill. App. 3d 444, 452, 599 N.E.2d 449, 455.) In this case, therefore, we must determine whether the City's constructive notice of the defect is an ultimate fact which the plaintiff had to prove in order to prevail.

We acknowledge that the tort liability of a municipality is governed by the Tort Immunity Act. (*Burke v. Grillo* (1992), 227 Ill. App. 3d 9, 590 N.E.2d 964.) Further, it is well established that the purpose of the Tort Immunity Act is to protect local governments and their employees from liability arising out of the operation of government. *Burke*, 227 Ill. App. 3d at 18, 590 N.E.2d at 969.

■ Initially, we look to the statutory provision that is at the heart of the dispute on appeal—section 3—102(a) of the Tort Immunity Act. Section 3—102(a) provides:

"Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3—102(a) (West 1994).

The plaintiff argues that section 3—102(a) does not apply to this case and directs us to examine section 2—101 of the Tort Immunity Act, which provides, in part:

> "Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee. Nothing in this Act affects the liability, if any, of a local public entity or public employee based on:
>
> a). Contract." 745 ILCS 10/2—101 (West 1994).

■ The plaintiff maintains that given part (d) of the court's instruction No. 1, the jury could have found that the City breached its duty to her by failing to repair the curb section in question pursuant to the terms of the Agreement. She contends that section 2—101 operates to remove this case from the scope of the Tort Immunity Act because the Act only applies to "tort based actions" and not to "contract based actions."

First, she claims that the City owed a "contract duty" to her to maintain the curb because she was a third-party beneficiary to the Agreement. We cannot accept this contention as nothing in the record or instructions to the jury indicates that the plaintiff based her cause of action on a breach of contract theory. Taken as a whole, the jury instructions expressly indicate that the plaintiff's theory of the case sounded in tort. The court's instruction No. 1 expressly indicates that the jury was asked to determine whether the City was negligent and not whether it breached a contract. Although it is true that part (d) of the court's instruction No. 1 concerns a contract, the instruction indicates that the defendant's potential liability stems from a tort duty. The plaintiff argued that the jury could have found the defendant negligent for failing to repair the curb under the terms of the Agreement. This theory differs greatly from one in which the jury is permitted to find that a party breached a contract and is allowed to calculate damages accordingly.

We do not reach the issue of whether it was proper for the court to allow the jury to consider whether the City breached a tort duty to the plaintiff pursuant to its Agreement with the State of Illinois. For purposes of this appeal, it is not necessary for this court to resolve the issue of whether this particular Agreement created a tort duty. Compare *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 592 N.E.2d 1098 (recognizing that the defendant's potential liability in negligence arose from a similar agreement between the State of Illinois and a municipality).

Alternatively, the plaintiff argues that section 2—101 of the Tort Immunity Act applies to cases where the City's tort duty arises out of a contract. She maintains that if the City wanted to remain free

from tort liability arising out of its Agreement with the State, then it could have placed an express limitation in the Agreement. In order to reach the merits of the plaintiff's argument, we turn to fundamental principles of statutory construction.

■ The primary rule of statutory construction is that the intention of the legislature should be ascertained and given effect. (*Lerma v. Rockford Blacktop Construction Co.* (1993), 247 Ill. App. 3d 567, 617 N.E.2d 531.) The legislative intent should be sought primarily from the language used in the statute. (*Thompson v. County of Cook* (1991), 222 Ill. App. 3d 459, 584 N.E.2d 170.) The language is usually the best indication of legislative intent and "such language should be accorded its plain or ordinary and popularly understood meaning." (*Fraley v. City of Elgin* (1993), 251 Ill. App. 3d 72, 76, 621 N.E.2d 276, 280.) Additionally, courts must consider the reason for the law, the evil to be remedied and the object to be obtained by the statute. *Fraley*, 251 Ill. App. 3d at 76, 621 N.E.2d at 280.

■ We must determine whether the legislature intended section 2—101 of the Tort Immunity Act to apply to negligence actions based on a voluntary undertaking which is evidenced by a contract. Webster's Third New International Dictionary provides several definitions of "contract." Among them are: "1 a: an agreement between two or more persons or parties to do or not to do something" or "4: the department or principles of law having to do with contracts." Webster's Third New International Dictionary 494 (1986).

Given commonly understood principles of grammar and usage, we conclude the legislature intended the latter definition indicating the principles of law having to do with contract theory. The portion of section 2—101 at issue states, "Nothing in this Act affects the liability, if any, of a local public entity or public employee, based on *** [c]ontract." (745 ILCS 10/2—101 (West 1994).) It does not say that the Act does not affect liability "based on *a* contract." It is evident from the manner in which the word "contract" is employed in section 2—101 that the legislature meant to exclude causes of action under contract theory.

■ The plaintiff further argues that the Tort Immunity Act does not apply because Avenue L does not "belong" to the City as required by section 3—101. Section 3—101 of the Tort Immunity Act provides:

"As used in this Article unless the context otherwise requires 'property of a local public entity' and 'public property' mean real or personal property owned or leased by a local public entity, but do not include easements, encroachments and other property that are located on its property but that it does not own, possess or lease." 745 ILCS 10/3—101 (West 1994).

The defendant responds that under *Lerma v. Rockford Blacktop Construction Co.* (1993), 247 Ill. App. 3d 567, 617 N.E.2d 531, the plaintiff's argument fails, and we agree. In *Lerma*, a park district was sued for negligence and willful and wanton misconduct for causing or allowing a treacherous undercurrent to be created in a State-owned river, which led to the drowning deaths of two children. The plaintiff argued that the Tort Immunity Act did not apply because the park district did not own the river nor did it have a formal lease with the State as required by section 3—101.

The court in *Lerma* reasoned that the language of section 3—101 is ambiguous on its face and that the legislature intended to include all property owned, leased or possessed by a public entity including any encroachment, easement or property of others located on its property. The court further reasoned that the park district maintained all of the incidents of a lease—possession, control, maintenance and repair—even though it did so without the formality of a lease. The court held that because the park district exercised "sufficient dominion" over the river and dam, the property fell within the Act's definition of "public property." As such, the court concluded the Tort Immunity Act applied to the plaintiff's cause of action against the park district. *Lerma*, 247 Ill. App. 3d at 572, 617 N.E.2d at 536.

The same analysis is equally compelling in the present case. Here, we are faced with a jury finding in response to special interrogatory No. 1 that the City had the "maintenance responsibility" for the curb. We determine that such a finding is adequate to show that the City exercised sufficient dominion over the curb, such that the curb could be considered to be within the scope of section 3—101. Therefore, as in *Lerma*, we hold that the Tort Immunity Act applies to this case, despite the absence of clear evidence that the City formally owned or leased the curb. As such, we conclude that the plaintiff's argument that Interrogatory 2 did not control the verdict fails.

■ The plaintiff next argues that even if we find that Interrogatory 2 controls the verdict, the jury's response was against the manifest weight of the evidence. (See *Kirby v. Swedberg* (1969), 117 Ill. App. 2d 217, 253 N.E.2d 699.) A determination is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based on any evidence. *Tierney v. Community Memorial General Hospital* (1994), 268 Ill. App. 3d 1050, 1054, 645 N.E.2d 284, 287.

Given the record, we cannot say that it is clearly evident that the

City had constructive notice of the condition of the curb. Much of the evidence presented at trial permits the conclusion that the City did not have constructive notice of the defective curb. For example, although the defect existed for 8 to 11 years, neither the plaintiff nor her husband ever noticed the condition of the curb. Also, neither party presented any testimony concerning who built the defective curb. As such, we conclude that it would not have been unreasonable for the jury to conclude that the City did not have constructive notice of the curb's condition.

The plaintiff makes several additional arguments concerning the issue of constructive notice. First, the plaintiff claims that because the defect in the curb existed for between 8 and 11 years, the City had constructive notice, citing *Jones v. City of Rock Island* (1968), 101 Ill. App. 2d 174, 242 N.E.2d 302. The plaintiff's reliance on *Jones* is misplaced. In *Jones*, the court merely found that the plaintiff presented enough evidence concerning the existence of the defect to allow the question of notice to go to the jury. Based on the record in this case, we cannot say as a matter of law that the City had constructive notice of the condition of the curb.

■ The plaintiff also draws our attention to a juror affidavit concerning the jury's understanding of constructive notice. However, Illinois courts do not permit juror affidavits to impeach the jury's finding. (*Chalmers v. City of Chicago* (1982), 88 Ill. 2d 532, 537, 431 N.E.2d 361, 364.) Also, the jury explicitly was told that it could find that the City had constructive notice of the defect "where conditions have existed for such a length of time or are so conspicuous or plainly visible that a public entity might have known of it through the exercise of reasonable care and due diligence." As such, we find no merit to this aspect of the plaintiff's argument.

■ The plaintiff's final argument on appeal is that the City had constructive notice because it built the defective curb. She attempts to equate the circumstances in the case at bar with those in *Harding v. City of Highland Park* (1992), 228 Ill. App. 3d 561, 591 N.E.2d 952.

In *Harding*, the court held that when an affirmative act of a municipality's agents or employees causes a dangerous condition, no actual or constructive notice is required. As such, the court concluded section 3—102(a) of the Tort Immunity Act did not apply. (*Harding*, 228 Ill. App. 3d at 571, 591 N.E.2d at 959.) In the present case, however, the record is devoid of sufficient evidence that the City created the defect in the curb in question. More importantly, the plaintiff concedes that she failed to present any evidence that the City had actual notice of the curb's condition. We regard this concession as an admission that she failed to present evidence that the City

created the defect in question. Consequently, the trial court did not err in entering a judgment notwithstanding the verdict in favor of the City.

We note that the parties raised several additional issues in their respective briefs on appeal. For example, the defendant argues that because the alleged defect in the curb was only slight and therefore considered *de minimis*, the City could not be held liable for negligence. (See *Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601, 145 N.E.2d 105.) We find that additional issues such as this were not fully litigated below and are not crucial to a resolution of the present appeal. Consequently, we decline to address them.

We affirm the trial court's order entering a judgment notwithstanding the verdict in favor of the defendant, the City of Chicago.

Affirmed.

HOFFMAN, P.J., and CAHILL, J., concur.