(Nos. 78760, 78790 cons.—Appellate court judgments reversed; circuit court judgments affirmed.)

MICHAEL BUCHELERES *et al.*, Appellees, v. THE CHICAGO PARK DISTRICT, Appellant.—DAVID SMITH, Appellee, v. THE CHICAGO PARK DISTRICT, Appellant.

*Opinion filed April 18, 1996.*

James D. Wascher, of Friedman & Holtz, P.C., of Chicago, for appellant.

John Bernard Cashion, of Chicago, for appellees.

Julie L. Trester, Michael Resis and Glen E. Amundsen, of Querrey & Harrow, Ltd., of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel.

Steven J. Kleinman, of Wheaton, and Jay S. Judge,

of Judge & James, Ltd., of Park Ridge, for *amici curiae* Illinois Association of School Boards *et al.*

John G. Phillips and Bruce Robert Pfaff, both of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Nelson A. Brown, Jr., of Chicago, for appellant.

Edward J. Manzke, of Stotis & Baird, of Chicago, for appellee.

Julie L. Trester, Michael Resis and Glen E. Amundsen, of Querrey & Harrow, Ltd., of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel.

Steven J. Kleinman, of Wheaton, and Jay S. Judge, of Judge & James, Ltd., of Park Ridge, for *amici curiae* Illinois Association of School Boards *et al.*

John G. Phillips and Bruce Robert Pfaff, both of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE McMORROW delivered the opinion of the court:

These consolidated appeals present the issue of whether defendant, the Chicago Park District (Park District), had a duty to warn against or protect plaintiffs from the risks associated with diving off concrete seawalls into Lake Michigan. In both cases, the circuit court of Cook County granted the Park District sum-

mary judgment on the basis that it did not have a duty to warn plaintiffs of the dangers involved in diving into a natural body of water because such danger was open and obvious. In each case, with one justice dissenting, the same appellate panel reversed and remanded for trial. In *Bucheleres*, 269 Ill. App. 3d 791, the appellate court majority held that summary judgment was improper because there existed a question of fact regarding whether defendant adequately warned plaintiffs of the risks of diving into shallow water. In *Smith*, 269 Ill. App. 3d 812, the appellate court majority held that if defendant knew or should have known of the presence of submerged objects in the water into which plaintiff dived, and failed to warn against such danger, a cause of action for willful and wanton conduct would be stated and governmental tort immunity would not apply. We granted defendants' petitions for leave to appeal in both cases (145 Ill. 2d R. 315(c)) and consolidated them.

## BACKGROUND

### Bucheleres, No. 78760

The record contains pleadings and discovery material that may be summarized as follows. On May 27, 1988, one day before the official opening of the Chicago beaches, Michael Bucheleres arrived at the Oak Street Beach at approximately 11 a.m. No lifeguards were on duty. Many people had congregated at the beach because of the warm weather. Bucheleres proceeded just north of Oak Street Beach toward Division Street and joined a group of people who were playing a game next to a concrete seawall commonly called the "Division Ledge." After awhile Bucheleres left the game, ran approximately 15 feet, and dived off the seawall head first into the lake with his arms extended over his head. He struck his head on the sand bottom and then floated to the surface, unable to move his arms or legs. Others

present at the Division Ledge helped pull Bucheleres out of the water. As a result of his injury, Bucheleres was diagnosed a quadriplegic.

Bucheleres filed suit against the Park District in its capacity as the entity that owns, operates, and maintains the lakefront beach areas. Plaintiff claimed that the Park District failed to adequately warn against and protect persons from the dangers of diving from the Division Ledge into shallow water. Specifically, he claimed that in the months preceding his accident, defendant had ordered that a large quantity of sand be added to the Oak Street Beach and Division Ledge area to compensate for sand erosion that had occurred during the winter. According to Bucheleres, such placement of sand effectively rendered the water level shallower than it had been previously and thereby triggered a duty upon the Park District to ensure that swimmers would not attempt to dive from the Division Ledge into Lake Michigan. Bucheleres claimed that defendant was aware of the popularity of the Division Ledge as a gathering place and was also aware that persons had, in the past, dived from the Ledge into the lake and sustained injuries because of the shallowness of the water.

The Park District moved for summary judgment contending that it owed Bucheleres no duty to warn or protect because of the open and obvious dangers of diving into Lake Michigan without first ascertaining the depth of the water. Therefore, defendant argued, the law did not require defendant to anticipate or guard against plaintiff's injury.

The trial court considered a substantial number of depositions and affidavits from a variety of witnesses regarding the incident itself, the existence and placement of warning signs in the area, and the fluctuating level of the lake water over the years. Evidence indicated

that sand was brought to the Division Ledge and Oak Street Beach area, as part of the Park District's ongoing shoreline protection and beach rehabilitation plan, to replenish sand lost to erosion and water currents. After a severe winter storm in 1987 washed away the sand from the southern edge of the Division Ledge and caused an adjacent concrete promenade to collapse, an independent contractor was hired to repair the damaged promenade and fill the washed out area with sand. Between April 19 and 22, 1988, the Park District graded the sand toward the north at Oak Street Beach to reclaim portions of the beach that had been eroded or pushed south during the winter. Other evidence revealed that in addition to changes in the level of the sand bottom caused by storms and erosion, the surface level of the lake dropped naturally by more than one foot during the months preceding Bucheleres' injury. The evidence further indicated that the water adjoining the seawall of the Division Ledge historically was shallow, often only three feet deep. The Park District was aware of some diving activity in the Division Ledge area and knew that some patrons of the beach had bumped their heads or scraped the bottom, but according to the Park District's information, no one previously had sustained as severe a fracture as had Bucheleres.

Michael Bucheleres, aged 21 at the time of his injury, was an experienced swimmer and diver who learned to swim as a young child and swam competitively until he entered high school. He had visited Oak Street Beach approximately 50 times before the date of his injury. He said he had dived into the Lake from the Division Ledge "many times."

It is undisputed in the record that the Park District took measures to prevent users of the beach from attempting hazardous diving into the shallow water off the Division Ledge. Since at least 1983, the Park District

has instructed its lifeguards to issue oral warnings to beach patrons. In addition, defendant has long posted signs prohibiting diving from the Division Ledge. Until 1984, these signs were painted in yellow block letters on the surface of the Division Ledge and read "No Diving" or "Danger No Diving." Since 1985, the Park District has used the international symbol for no diving, stenciling signs every 25 feet along the Ledge. Although Bucheleres and another witness testified that they did not recall seeing any "no diving" signs on the Ledge on May 27, 1988, other witnesses, including Betty Bucheleres Bivans, co-plaintiff, testified that signs painted on the Ledge remained legible, although faded, on and after the date of the accident.

The trial court granted summary judgment to the Park District, holding, "The open and obvious danger posed by diving into the unchartered waters under the circumstances of this case must control this court's determination. The peril of the lake bottom should have been anticipated." The court held that the Park District's grading of the beach area with added sand did not change the result because plaintiff was "swimming in the lake at that location for the first time in this season [and failed to check its depth]. The doctrine of open and obvious danger posed by a body of water with a sandy beach with shifts, with currents and disturbances *** is [not] vitiated by the fact that the Park District graded the beach and added sand which shifted in the waters thereby affecting the depth from the past year. *** It is a large open lake, there are constantly shifting sands from currents. *** It cannot be said that the lake presented perils that the plaintiff did not appreciate."

The appellate panel reversed the trial court's entry of summary judgment, reasoning that the Park District had a duty to exercise reasonable care to warn beach

patrons of the risks of diving into shallow water notwithstanding that the risk presented by water generally is considered "open and obvious." The appellate court remanded the cause for trial, stating, "[T]here is a question of material fact as to whether signs prohibiting diving or warning of the dangers of diving in the area of the Division Ledge were sufficient at the time of the occurrence." 269 Ill. App. 3d at 795.

### Smith, No. 78790

In August 1985, David Smith and a friend went to Foster Avenue Beach, which is owned, operated, and maintained by the Park District. Approximately 50 feet north of the sand beach is a seawall with rocks or molded slabs, "like platforms." This seawall area is also maintained by the Park District, to the extent of removing litter and debris on a periodic basis. On the day of his accident, Smith, who was 27 years old, went to the seawall area north of the beach where approximately 20 people were jumping, diving, and swimming. Smith, an experienced swimmer, said he had dived from this area many times without mishap. He noticed two lifeguards at the sandy area but did not see any at the rocky area. The Park District represented that there was a "No Diving" sign posted near the rocks and a "No Diving" notice stenciled on the rocks; however, Smith claimed that he did not see such notices.

Smith estimated that the water was "very deep" where he dived, but he did not attempt to ascertain the actual depth before entering the water. Shortly after his arrival at the rocky area north of the sand beach, Smith executed a "flat," or horizontal-type, dive into the water. Immediately, he felt as though his head had been "hit by a sledgehammer." He did not know what he might have hit and at first admitted he did not know whether he had hit the lake bottom, but then added that he "kn[e]w for a fact [he] didn't hit the bottom

because [he] didn't dive that deep." After floating to the surface, he was able to swim back to the rocks with his friend's assistance. They left the water by climbing a metal ladder that was attached to the seawall. Smith sustained a cervical fracture but was not permanently injured as a result of the accident. Although Smith's complaint alleges that he hit a submerged rock, the object Smith encountered was never precisely identified or described during discovery.

The Park District filed an answer to the complaint and raised the affirmative defense of statutory governmental tort immunity under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3—106 (West 1992)). Smith amended his complaint to assert willful and wanton conduct on the part of defendant, to wit: (1) failing to maintain the swimming area at the Foster Avenue Beach; (2) providing inadequate supervision over the swimming area; (3) failing to provide warning of a dangerous condition, *e.g.*, that it was unsafe to dive into the water from the rocks, and (4) failing to "correct or remove the dangerous condition when [it] knew of its danger to persons in the swimming area."

After conducting discovery, the Park District moved for summary judgment, arguing that it owed Smith no duty on the date of the accident because the risk of injury resulting from a dive into water of uncertain depth was open and obvious. Further, the Park District argued that it was immune from liability under the Tort Immunity Act and that there was no evidence to support the charge that its conduct was willful and wanton.

In opposition to the motion for summary judgment, Smith submitted the affidavit and supplemental affidavit of Alan Caskey, who holds a Ph.D. in recreation and park administration. Dr. Caskey was represented to be an expert in the design and maintenance of lakefront

areas. Dr. Caskey gave his opinion that plaintiff had struck his head on a submerged object rather than the lake bottom, and stated that there are "nationally recognized standards" in the operation of recreational areas such as the one in question. Such standards, according to Dr. Caskey, obligate park districts to "either survey the area where diving occurs to determine that there are no submerged hazards, or *** effectively prohibit diving." Dr. Caskey concluded in his supplemental affidavit that "an adult of reasonable intelligence, seeing the beach, the lifeguards, the rocky wall, the ladders along the wall, with knowledge that the lake is very deep at this location, and with knowledge of a long history of diving off said wall, would not expect there to be submerged rocks that would pose a serious risk of serious personal injury."

The Park District moved to strike both the original and supplemental affidavits of Dr. Caskey pursuant to Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)). The Park District challenged the witness' qualifications as an expert, the relevance of his opinion to the issue of legal duty, and the adequacy of the foundation upon which the conclusions were based. The trial court struck the affidavits, finding them purely conjectural and not in conformance with the requirements of Rule 191. Based on the law and the competent evidence before it, the court ruled that there was "an absence of any showing upon which [the court] could infer the existence of duty." The court held that the Park District had a clear right to summary judgment, irrespective of the expert's affidavits.

On appeal, the appellate court reversed, holding that the trial court erred in striking the expert's affidavit and further holding that the Tort Immunity Act did not bar plaintiff's cause of action. The court ruled that if the Park District "knew of the submerged object or

failed to discover it through recklessness or carelessness when it could have been discovered by the exercise of ordinary care, and defendant did not adequately warn plaintiff of the danger, then defendant would be guilty of wilful and wanton conduct. Thus, assuming that the facts alleged are true, defendant had a duty to adequately warn plaintiff of the danger." 269 Ill. App. 3d at 818.

We granted the Park District's petition for leave to appeal in both cases. We also allowed filing of a brief by *amicus curiae* Illinois Trial Lawyers Association on behalf of plaintiffs. On behalf of defendants, we allowed the *amicus curiae* brief of the Illinois Association of Defense Trial Counsel and the joint *amicus curiae* brief of the Illinois Association of School Boards, the Illinois Association of Park Districts, the Institute for Local Governmental Law, the Illinois Municipal League and the Illinois Governmental Association of Pools.

## ANALYSIS

Duty is determined by asking "whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff." *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990). Whether one person owes another a duty of reasonable care under a particular set of circumstances is an issue of law for the court (*e.g., Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417 (1992)) and is subject to a *de novo* standard of review. In the consolidated cases at bar, the Park District requests this court to reaffirm long-standing principles which recognize that owners and occupiers of land generally owe no legal duty to take precautions or warn against risks from "open or obvious" conditions present on the land. See, *e.g., Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 326 (1978); *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 447-48 (1990). Specifically, the

Park District argues that it owes no duty to protect experienced, adult swimmers who injure themselves by diving into a natural body of water without first learning the water's depth and the bottom's composition. According to the Park District, the decisions of the appellate panel in the case at bar virtually abandon the open and obvious doctrine in the analysis of duty and distort the pertinent case law, resulting in a significant and unwarranted expansion of the duties of every landowner in Illinois.

## I

Initially, we address the argument that the open and obvious doctrine should be rejected or greatly modified because it circumvents the principles of comparative fault. This contention, presented by the Illinois Trial Lawyers Association in its *amicus curiae* brief in support of plaintiffs, is based on the claim that the "obvious danger defense" is similar to other "recovery-barring doctrines like assumption of the risk and contributory negligence" which "were abolished because of their harshness and unfairness to an injured plaintiff. Under the guise of a duty analysis, the open and obvious doctrine does what assumption of risk and contributory negligence can no longer do."

At least three times in recent years this court has considered and rejected the argument that Illinois' adoption of comparative negligence has affected the basic duty a defendant owes a plaintiff in negligence. See *Dunn v. Baltimore & Ohio R.R. Co.*, 127 Ill. 2d 350, 365 (1989); *Ward v. K mart Corp.*, 136 Ill. 2d 132, 143-45 (1990); *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 448 (1990). *Dunn* holds that a train stopped at a crossing is generally considered adequate notice and warning of its presence to persons who are exercising ordinary care for their own safety, and that the adoption of comparative negligence principles did not

expand or alter the duty owed by a railroad to motorists approaching a stopped train at a crossing. In *Ward*, this court expressly "reject[ed] plaintiff's argument that the adoption of comparative negligence in this State has affected the basic duty a landowner or occupier owes to entrants upon his land with respect to such conditions." *Ward*, 136 Ill. 2d at 143. Noting that comparative negligence had indeed altered the nature of *defenses* available to a defendant, the court reiterated in *Ward* that the existence of a legal duty is a prerequisite to a defendant's liability regardless of the availability of defenses. In *Deibert*, the Illinois Trial Lawyer's Association, as *amicus curiae*, similarly argued that the open and obvious doctrine operated as a complete bar to a plaintiff's cause of action and was therefore incompatible with Illinois' adoption of comparative negligence. Noting this court's prior rejection of this contention, the court declined the invitation to reconsider the issue. *Deibert*, 141 Ill. 2d at 448.

In the case at bar, we once more affirm the continued viability of the open and obvious doctrine in the analysis of a landowner's duty to persons injured while on the landowner's property. The existence of a defendant's legal duty is separate and distinct from the issue of a plaintiff's contributory negligence and the parties' comparative fault. The Illinois Trial Lawyer's Association's characterization of the open and obvious doctrine as a "defense" that should be submitted to the jury as part of the comparison of the relative fault of the parties overlooks the simple truism that where there is no duty there is no liability, and therefore no fault to be compared.

## II

Illinois law holds that persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially

dangerous conditions that are open and obvious. This court has recognized,

> "Certainly a condition may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition. Even in the case of children on the premises, this court has held that the owner or possessor has no duty to remedy conditions presenting obvious risks which children would generally be expected to appreciate and avoid. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 286 (seven-year-old fell through ice on artificial retention pond) \*\*\*."
> *Ward*, 136 Ill. 2d at 148.

In cases involving obvious and common conditions, such as fire, height, and bodies of water, the law generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such condition. The open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks. See *Ward*, 136 Ill. 2d at 148, citing authority reprinted in 5 F. Harper, F. James & O. Gray, Law of Torts § 27.13, at 242 (2d ed. 1986); see also *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110 (1995) (holding that under Illinois law defendant could reasonably expect that six-year-old child would appreciate the risk presented by swimming pool and therefore owed no duty arising out of defendant's placement of utility pedestal next to fence around pool).

Notwithstanding the above well-established principles, the appellate court in the cases at bar held that the Park District owed plaintiffs a duty to warn against the risks of diving into the lake. Relying on authorities that recognize a narrow limitation upon or exception to the open and obvious rule, the appellate court held that the "open and obvious doctrine is not to be slavishly applied any longer as a *per se* rule to deny liability. Rather,

a defendant's duty to exercise reasonable care under all the circumstances of a case remains intact despite the existence of an open and obvious condition." *Smith,* 269 Ill. App. 3d at 817; *Bucheleres,* 269 Ill. App. 3d at 794 (citing, *inter alia, Ward v. K mart Corp.,* 136 Ill. 2d 132 (1990), and *Deibert v. Bauer Brothers Construction Co.,* 141 Ill. 2d 430 (1990)).

We agree that Illinois law does not view the existence of an open and obvious condition as an automatic or *per se* bar to the finding of a legal duty on the part of the defendant who owns, occupies, or controls the area in which the injury occurred. *Ward,* 136 Ill. 2d at 145; *Deibert,* 141 Ill. 2d at 435-37; see also *American National Bank & Trust Co. v. National Advertising Co.,* 149 Ill. 2d 14, 26-27 (1992). However, the appellate court misapprehended the scope of *Ward* and *Deibert* and therefore misapplied the pertinent law to the instant cases. *Ward, Deibert,* and *American National Bank* illustrate the exception to, or limitation upon, the "open and obvious" bar to the existence of a duty.

In *Ward,* a customer of the defendant store collided with a five-foot-tall concrete post while carrying a large purchased item that obscured the customer's vision. The concrete post was located 19 inches from the outside wall of the store, just outside the door of the "Home Center" area of K mart. The door was the only point at which the customer could leave the store at that time and there were no windows or panels near the door to permit viewing the post from the interior of the store. Customers exiting with their purchases faced a downward step of approximately six inches.

The jury in *Ward* found the defendant liable for plaintiff's injuries and returned a verdict favoring plaintiff. The defendant sought judgment notwithstanding the verdict, arguing that the concrete post was an open and obvious condition as to which it owed the

plaintiff no duty. This court, however, upheld the jury's verdict, reasoning that the " 'known' or 'obvious' risk principle" does not mean that "the duty of reasonable care owed by an owner or occupier to those lawfully on his premises does not *under any circumstances* extend to conditions which are known or obvious to such entrants \*\*\*." (Emphasis in original.) *Ward*, 136 Ill. 2d at 145. Instead, this court reaffirmed the traditional duty analysis used in negligence cases in Illinois, which includes consideration of the likelihood of injury, the reasonable foreseeability of such injury, the magnitude of the burden of guarding against injury and the consequences of placing that burden on defendant. *E.g., Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 526 (1987). After applying this traditional analysis to the specific facts of the case, this court in *Ward* held that the defendant could have reasonably foreseen that customers leaving its store would collide with the post, even in the exercise of due care for their own safety, because they might have been momentarily distracted by carrying large items and would fail to see or remember the existence and location of the post. Significantly, this court noted that it "may well have arrived at a different conclusion if the post would have been located further away from the entrance of the building, or if the plaintiff would not have been carrying any vision-obscuring bundle." *Ward*, 136 Ill. 2d at 153. This court concluded that the burden on the defendant of protecting against the danger was slight, as a warning sign or relocation of the post may have sufficed. Accordingly, this court held that K mart owed a duty of reasonable care and upheld the jury's verdict in favor of the plaintiff.

In *Deibert*, this court again had occasion to consider whether the open and obvious nature of a condition foreclosed the imposition of a legal duty upon a defen-

dant. The plaintiff was a worker who stepped out of a portable toilet at a construction site and, looking up to check for falling debris, stumbled over a large rut and injured his back. Following the reasoning of *Ward*, this court held that the defendant owed the plaintiff a duty of reasonable care notwithstanding the otherwise open and obvious nature of the rut because the defendant should have anticipated the occurrence of injuries under the circumstances. Relevant to this determination was the fact that the portable toilet was situated near a balcony from which other workers had been throwing construction materials and the rut was directly in front of the portable toilet. In analyzing the issue of duty, the *Deibert* court concluded that the magnitude of the burden of guarding against the injury was slight because the defendant could have moved the portable bathroom to a different location, away from falling debris and where the heavy earth-moving machinery would be less likely to leave ruts directly in front of the door. See also *American National Bank & Trust Co. v. National Advertising Co.*, 149 Ill. 2d 14 (1992) (duty to warn sign painter existed where high-voltage wires were four to five feet above work area; defendant could have reasonably anticipated painter's distraction from the danger as he worked with ladders and other equipment, and defendant could have warned of the electrocution hazard at little expense or inconvenience).

*Ward*, *Deibert*, and *American National Bank* illustrate the "forgetfulness or distraction" exception to the general rule of no liability for open and obvious conditions. Section 343A of the Restatement (Second) of Torts was quoted with approval in *Ward* as follows: " '(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite*

*such knowledge or obviousness.'* " (Emphasis in original.) *Ward*, 136 Ill. 2d at 149, quoting Restatement (Second) of Torts § 343A (1965). Comment *f* to section 343A of the Restatement explains that such anticipation of harm exists "where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Restatement (Second) of Torts § 343A, Comment *f*, at 220 (1965); see also W. Keeton, Prosser & Keeton on Torts § 61, at 427 (5th ed. 1984) (harm may be anticipated "where there is reason to expect that the invitee's attention will be distracted, as by goods on display, or that after a lapse of time he may forget the existence of the condition, even though he has discovered it or been warned; or where the condition is one which would not reasonably be expected, and for some reason, such as an arm full of bundles, it may be anticipated that the visitor will not be looking for it").

The concrete post in *Ward* and the large rut in *Deibert* were both "obvious" conditions, not necessarily dangerous in themselves, that the plaintiffs would have avoided had they not been distracted by foreseeable circumstances, *i.e.*, carrying bulky packages out a door inches from a concrete post in *Ward* and watching out for falling debris at a construction site in *Deibert*. The high-voltage wires in *American National Bank* and their proximity to the sign the plaintiff was painting created a dangerous "obvious" condition in which injuries could have been reasonably foreseen and easily warned against by the defendant. The justification for imposing a legal duty in *Ward*, *Deibert* and *American National Bank* is not present in the instant consolidated appeals because circumstances analogous to those three cases are entirely lacking here. The record does not indicate that plaintiffs in the instant cases were distracted or

forgetful of the lake's existence when they decided to dive off the seawalls. Nothing concealed or obscured the existence of the lake from the divers, who knew they were diving into the water and specifically intended to do so. Therefore, *Ward, Deibert,* and *American National Bank* do not support plaintiffs' argument, or the appellate court's rulings, that the Park District owed them a duty of care notwithstanding the open and obvious risks associated with diving into the lake under the circumstances present in the instant appeal.

Our review of Illinois appellate decisions reveals several cases that have considered the specific issue presented in the case at bar: whether a landowner owes a duty to persons who are injured while diving into natural bodies of water. In *Dowen v. Hall,* 191 Ill. App. 3d 903, 907 (1989), defendant's guest dived off a pier into a lake in the dark and injured himself when he struck the bottom. In holding that the defendant owed no duty to warn of danger or to prevent the plaintiff from diving, the court held, "[A] reasonable adult in plaintiff's position would recognize that an attempt to execute a head-first flat dive into the lake, without prior awareness of the depth of the waters, might result in severe injury from hitting one's head on the lake bottom." *Dowen,* 191 Ill. App. 3d at 911. The court ruled that the danger involved in "a flat dive off a pier into muddy waters of uncertain depth in a natural lake is open and obvious to a reasonable adult." *Dowen,* 191 Ill. App. 3d at 907.

In *Hagy v. McHenry County Conservation District,* 190 Ill. App. 3d 833 (1989), the court held that the defendant owed no duty to protect a 15-year-old from the obvious risks associated with diving into a swimming hole without checking for changes in the depth of the creek from preceding years. Similarly, the court in *Sumner v. Hebenstreit,* 167 Ill. App. 3d 881 (1988), held that the defendant was not liable for the injuries incurred

when the plaintiff dived into a water-filled sand pit he had dived into many times before. The *Sumner* court observed that the soft sandy bottom of a body of water "shifts with currents and disturbances" and that there was nothing unusual or deceptive about the bottom of a sand pit which presented a special or indiscernible danger. *Sumner*, 167 Ill. App. 3d at 886.

In a case involving a swimming pool diving accident, the court affirmed summary judgment in favor of the owners of a swimming pool where a 17-year-old, experienced swimmer was injured when he executed a running dive into three-foot-deep water and struck his head. *Osborne v. Claydon*, 266 Ill. App. 3d 434 (1994). The *Osborne* court held that the pool owners had no duty to protect against or to warn the plaintiff of the risks of making a running dive into their pool. But *cf. Schellenberg v. Winnetka Park District*, 231 Ill. App. 3d 46 (1992) (relying in part on expert opinion and holding that obvious risk doctrine did not bar minor plaintiff's suit in case involving "run-and-plunge" dive into shallow water).

Many appellate court decisions involving drowning rather than diving injuries have acknowledged that liability ordinarily does not arise because of the open and obvious risks associated with natural and artificial bodies of water. See, *e.g., Torf v. Commonwealth Edison*, 268 Ill. App. 3d 87 (1994) (open and obvious nature of swirling lake water around power plant's discharge channel required judgment on pleadings to be entered in favor of defendant); *Englund v. Englund*, 246 Ill. App. 3d 468 (1993) (above-ground swimming pool deemed obvious danger as a matter of law in case involving drowning of three-year-old child); but *cf. Henson v. Ziegler*, 269 Ill. App. 3d 439 (1995) (holding that above-ground swimming pool, as distinguished from other bodies of water, did not pose an obvious danger to six-year-old child because children are encouraged to swim in pools).

Plaintiffs do not persuasively distinguish the cases, such as *Dowen*, *Hagy*, and *Sumner*, which hold that bodies of water are ordinarily considered to be open and obvious conditions and thereby carry their own warning of possible danger. Instead, plaintiffs urge this court to minimize the significance of open and obvious conditions on land in analyzing tort duty by focusing almost exclusively on what the defendant knew or should have known, *i.e.*, whether the harm to plaintiffs was foreseeable. Plaintiffs argue that the Park District was well aware that people frequented the lakefront areas and beaches, and that some patrons had been injured while diving off the seawalls. Therefore, plaintiffs contend, the risk of harm from diving was imminently foreseeable and the appellate court in both cases correctly found that the Park District owed plaintiffs a duty of reasonable care to prevent or adequately warn against diving from the seawalls, despite the open and obvious nature of the lake.

We reject plaintiffs' argument and the appellate court's reasoning that the instant cases fall outside the scope of the general rule regarding open and obvious conditions on land. On the threshold issue of whether the lake around the seawalls adjacent to the beaches was an open and obvious condition of potential hazard, it is undisputed that the water levels of Lake Michigan fluctuate and that storms and strong currents change conditions on the bottom of the lake and the surrounding shores. Plaintiffs do not argue that the concrete seawalls in issue were designed for diving; it is not disputed that the intended purpose of seawalls is to hold back the lake waters as part of the effort to prevent further erosion of the shoreline. We conclude that Lake Michigan, as a large body of water with uncertain or fluctuating water levels and bottom composition, presents open and obvious risks to lakefront patrons who

dive from concrete seawalls into the lake. We further conclude that the forgetfulness or distraction exception does not apply to the circumstances of the cases at bar.

## III

Having affirmed the applicability of the open and obvious doctrine to the case at bar, we complete the analysis of duty by assessing the effect the open and obvious doctrine has on the traditional factors that are relevant to the courts' imposition of a duty. As set forth in our precedent, these factors include the likelihood of injury, the reasonable foreseeability of such injury, the magnitude of the burden of guarding against injury, and the consequences of placing that burden on the defendant. See, *e.g.*, *Ward*, 136 Ill. 2d at 140-41. With respect to the first factor, we have observed elsewhere in this opinion that the law generally considers the likelihood of injury slight when the condition in issue is open and obvious because it is assumed that persons encountering the potentially dangerous condition of the land will appreciate and avoid the risks. See *Ward*, 136 Ill. 2d at 147. In contrast, if a danger is concealed or latent, rather than open and obvious, the likelihood of injury increases because people will not be as readily aware of such latent danger. We conclude that because Lake Michigan presents open and obvious risks to beach patrons, including divers, the likelihood-of-harm factor in the duty analysis has little weight in the cases at bar.

Similarly, the foreseeability of harm to others may be greater or lesser depending on the degree of obviousness of the risks associated with the condition. While injuries from drowning and diving might be anticipated wherever there are lakes, swimming pools, and other bodies of water, the legal concept of *reasonable* foreseeability of injury arising from open and obvious conditions takes into account that even young, unsophisticated or immature people are generally assumed to

appreciate the risks associated with such conditions and therefore exercise care for their own safety. *E.g., Cope v. Doe*, 102 Ill. 2d 278 (1984). In *Mt. Zion* we reiterated that "[t]he issue in cases involving obvious dangers, like fire, water or height, is not whether the child does in fact understand, but rather what the possessor may reasonably expect of him. [Citations.] The test is an objective one ***." *Mt. Zion*, 169 Ill. 2d at 126. In the instant cases, the foreseeability of plaintiffs' injuries must be evaluated in light of the above authorities. Moreover, we emphasize that simple foreseeability of injury is not, and has never been, dispositive on the issue of whether the law imposes a duty in negligence. See, *e.g., Lamkin v. Towner*, 138 Ill. 2d 510, 522-23 (1990); *Ward*, 136 Ill. 2d at 140; *Cunis v. Brennan*, 56 Ill. 2d 372, 375 (1974).

We conclude that the first two factors of the duty analysis do not favor the imposition of a duty upon the Park District to warn against diving or to prevent such diving. With the narrow exception discussed in cases such as *Ward* and *Deibert*, the law does not require persons to protect or warn against possible injuries from open and obvious conditions, which by their nature carry their own "warning" of potential harm.

Consideration of the last two factors in the duty analysis also suggests that no duty should be imposed against the Park District under the circumstances of the instant cases. These factors are the magnitude of the burden of imposing the duty and the consequences of such burden. The social utility of our lakefront areas is significant and the desirability of keeping them open to the public is an important concern in balancing the factors used in the analysis of duty. See *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 526-27 (1987) ("court's determination of duty reflects the policy and social requirements of the time and community"). The Park District's mere awareness that some beach

patrons congregate near the seawall ledges and dive therefrom does not translate into a legal duty to prevent all diving by taking such measures as fencing off the seawall areas or enforcing the existing diving prohibition with increased personnel and warnings. To require the Park District to undertake such steps, we believe, would create a practical and financial burden of considerable magnitude. Moreover, the consequences of placing such burden on the Park District might include the curtailment of the public's access to the lakefront and beaches, to the detriment of the public at large. Therefore, based on our consideration of all the relevant factors, we conclude that the appellate court erred in imposing a tort duty upon the Park District in both cases before us. Because slightly different issues are emphasized in the two cases, we further discuss each case separately.

A

In No. 78760, the appellate court stated that the sufficiency of the Park District's signage prohibiting diving raised a material fact issue. *Bucheleres*, 269 Ill. App. 3d at 795. As established by the record, the Park District maintains the lakefront beaches and surrounding land and provides lifeguarding services during certain warmer months of the year, but does not authorize or encourage beach patrons to dive from the Division Ledge. On the contrary, the record reveals that the Park District has a policy of stenciling warning signs prohibiting diving on the Ledge and training its lifeguards to give oral warnings against diving in prohibited areas. Although Bucheleres contends that he did not see the signs or receive specific warnings not to dive, the material issue in this case is not whether the Park District "adequately" warned Bucheleres or should have done more to prevent him from diving. Instead, the issue is whether the Park District had any duty to warn him of

the open and obvious nature of the lake under the facts present.

It is undisputed that Bucheleres entered Lake Michigan from the Division Ledge by way of a head-first dive begun with a running start. He did not check the depth of the water before diving, and, although he had dived at the same location many times in previous years, he could not reasonably assume that the lake water surrounding the seawall would remain a certain, constant depth, safe for diving. On the day of his accident, the Oak Street Beach was not yet open and no lifeguards were on duty. Although we are sympathetic to plaintiff, whose accident was extremely unfortunate, we cannot conclude that the Park District had a duty to prevent him from diving or to specifically warn him that the level of the lake around the seawall might have been lower in 1988 than it had been in previous years. We are not persuaded that it would be either practical or economically feasible to impose a duty on the Park District to constantly monitor the level of the lake, even before the beaches are opened, and to post additional warnings or to patrol the seawalls, perhaps on a daily basis during warm weather. Accordingly, based on the law discussed previously and the particular facts of this case, we hold that the Park District could have reasonably expected Bucheleres to appreciate the risk associated with diving into water of unknown depth and shifting currents and sands, with or without the posting of warning signs.

Our conclusion is not altered by the fact that sand had been added and graded to replenish sand lost to the erosive forces of winter storms weeks earlier. In *Torf v. Commonwealth Edison*, 268 Ill. App. 3d 87, 90-91 (1994), the appellate court rejected a similar argument, *i.e.*, that the defendant owed a duty to the drowning victims because the power plant owned by defendant discharged

warm water into Lake Michigan and created strong currents, thereby increasing the risk of drowning beyond that which a person swimming in the lake normally would encounter. The court observed,

> "In *Lerma* [*v. Rockford Blacktop Construction Co.*, 247 Ill. App. 3d 567 (1993)], this court rejected the argument that the creation of dangerous undertows could be a basis for liability, stating that 'bodies of water are deemed to signal obvious danger to persons old enough to be at large precisely because of their unknown surface or subsurface elements.' (*Lerma*, 247 Ill. App. 3d at 575.) Similarly, the fact that the undercurrents thus created were 'artificial' rather than 'natural' was not significant in the duty analysis." *Torf*, 268 Ill. App. 3d at 91.

In the instant case, the Park District's replacement of sand in an area of the lakeshore where the currents normally wash out the sand is not the type of conduct that gives rise to a duty where no duty existed before. If the Park District did not have a duty to warn or prevent Bucheleres from diving off the Division Ledge seawall because of the open and obvious nature of the lake and the other duty factors, defendant did not become liable to him simply by maintaining the lakeshore beaches through replenishment of sand. We conclude that the trial court correctly granted summary judgment to the Park District in case No. 78760.

### B

Similarly, we hold that the trial court properly granted summary judgment to the Park District in No. 78790. *Smith*, 269 Ill. App. 3d 812. Smith dived off a rocky area adjacent to the Foster Avenue Beach and was injured when his head struck something. The record does not clearly establish whether plaintiff hit the bottom of the lake, a submerged rock, or floating debris, but even assuming that Smith hit a submerged rock or a slab of concrete, no competent evidence was presented by plaintiff to suggest that defendant knew or should

have known that something was fixed and submerged in the water at that location. Our prior analysis of the Park District's duty with respect to warning against or preventing diving from its seawalls applies with equal force to the circumstances in Smith's case. Defendant was not shown to have any special knowledge of submerged hazards in the area. We do not believe it appropriate to impose upon the Park District a duty to monitor the lake's bottom in areas adjacent to seawalls where diving is not sanctioned by the Park District. We also reject plaintiff's argument that the Park District invited, anticipated, or encouraged diving by placing a metal ladder in the seawall. Although the appellate court's opinion noted that the ladder "clearly invited swimmers to dive into the water" (*Smith*, 269 Ill. App. 3d at 818), this comment is unsupported and speculative.

It is also apparent that the appellate court in *Smith* relied in part on opinions contained in the affidavits of plaintiff's alleged expert witness, Dr. Caskey. The appellate court held that the trial court erred in striking Dr. Caskey's original and supplemental affidavits. Based on our examination of the affidavits and the pertinent law, we conclude that the appellate court erred in its ruling with respect to the affidavits. The affidavits of Dr. Caskey refer to "nationally recognized standards" governing recreational use of park land which Dr. Caskey believes require park districts to either survey the area around seawalls that are adjacent to swimming beaches to determine that there are no submerged hazards or to "effectively prohibit diving." Further, Dr. Caskey opined that an adult of reasonable intelligence, seeing the beach and lifeguards adjacent to the rocky seawall, seeing the ladder on the wall, and "knowing that the lake is very deep at this location, and with knowledge of a long history of diving off said wall, would not expect

there to be submerged rocks that would pose a serious risk of serious personal injury." The appellate court acknowledged that "there is not a wealth of specific facts forming the bases for the opinions in Dr. Caskey's affidavits," but nonetheless held that the affidavits had enough specificity to permit the opinions to be present to a jury.

Our review of the record indicates that defendant challenged the qualifications of the expert and the lack of a foundation to support the existence of "national standards." The precise source of the national standards is not explained, nor is there a copy of such standards attached to the affidavit. In the Park District's motion to strike the affidavits, it cited cases in which Dr. Caskey's expert testimony had been criticized by other courts. Furthermore, the Park District's major challenge to the competence of the affidavits was whether Dr. Caskey's personal opinions were relevant to the existence of a legal duty in tort, and whether the opinion he expressed regarding defendant's failure to survey the lake bottom to ascertain the existence of submerged hazards was based on an adequate factual foundation and personal knowledge or was merely conjectural. The trial court found that nothing in either the original or supplemental affidavit assisted plaintiff's attempt to state a legal duty.

We hold that the trial court's granting of defendant's motion to strike Dr. Caskey's affidavits was correct, and that the opinions stated therein were properly disregarded on the motion for summary judgment. See, *e.g.*, 145 Ill. 2d R. 191 (expert's affidavit should be based on personal knowledge, set forth the facts on which the opinion is based with specificity, and should consist of admissible facts rather than conclusions); see also *Hagy v. McHenry County Conservation District*, 190 Ill. App. 3d 833, 840 (1989) (expert's conclusion that the dangers

of diving into a creek were not open and obvious improperly "invaded the province of the court by opining as to the obviousness of the condition").

Finally, we note that in both *Bucheleres* and *Smith* the Park District raised the affirmative defense of governmental tort immunity pursuant to section 3—106 of the Tort Immunity Act. This section provides immunity from actions sounding in negligence, but not for willful and wanton conduct. We need not decide issues involving the Park District's statutory immunity or the sufficiency of plaintiffs' allegations of willful and wanton conduct because our disposition in the cases at bar is premised on the absence of common law duty under the facts of each case.

For the foregoing reasons we reverse the judgments of the appellate court in No. 78760 and No. 78790, and affirm the rulings of the circuit courts, which granted the Park District summary judgment in both cases.

*Appellate court judgments reversed; circuit court judgments affirmed.*

JUSTICE HARRISON, dissenting:

As their states have enacted comparative fault legislation, courts in a growing number of jurisdictions have concluded that the common law doctrine of "open and obvious danger" can no longer be used to avoid the duty of care a possessor of land otherwise owes its invitees. See *Woolston v. Wells*, 297 Or. 548, 687 P.2d 144 (1984); *O'Donnell v. City of Casper*, 696 P.2d 1278 (Wyo. 1985); *Harrison v. Taylor*, 115 Idaho 588, 768 P.2d 1321 (1989); *Donahue v. Durfee*, 780 P.2d 1275 (Utah App. 1989); *Kendrick v. Ed's Beach Service, Inc.*, 577 So. 2d 936 (Fla. 1991); *Klopp v. Wackenhut Corporation*, 113 N.M. 153, 824 P.2d 293 (1992); *Tharp v. Bunge Corp.*, 641 So. 2d 20 (Miss. 1994); *Rockweit v. Senecal*, 197 Wis. 409, 541 N.W.2d 742 (1995). Under this line of cases, the existence of a known or obvious condition does not

preclude recovery by an invitee. It is simply an element to be considered by the jury in apportioning negligence between the invitee and the possessor of the land.

Although Illinois has adopted comparative fault principles (*Alvis v. Ribar*, 85 Ill. 2d 1 (1981)), this court has refused to adopt the new approach. Instead, it has continued to adhere to the basic common law rule that an invitee's voluntary encounter with a known or obvious danger will bar his recovery against the landowner absent certain extenuating circumstances. *Ward v. K mart Corp.*, 136 Ill. 2d 132 (1990); *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430 (1990); *American National Bank & Trust Co. v. National Advertising Co.*, 149 Ill. 2d 14 (1992). Today's decision is but the latest application of this rule.

If we could begin again, I would urge a different course. Now that we have a comparative fault system, albeit one that the legislature has modified significantly (see 735 ILCS 5/2—1116 (West 1994)), the open and obvious danger rule makes no more sense than the old defenses of contributory negligence and assumption of risk, which have now been jettisoned. It is a harsh and unjust principle of law yielding results that are often cruel, if not bizarre. See, *e.g.*, *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110 (1995) (six-year-old boy who suffered permanent brain damage after falling into swimming pool held to higher standard of care than multimillion-dollar telephone company).

The majority's attempt to distinguish the "open and obvious danger" rule from these other, now discarded, common law defenses is unpersuasive. Ultimately, its approach rests on nothing more substantial than semantics. Other states that have abandoned the rule have confronted the very same analytical hurdles and found them easy to clear.

Having said that, I see that for here and now, there is no point in contesting the matter. Wholly aside from the importance of adhering to principles of *stare decisis*, I believe that any reasonable challenge to the majority's approach has been effectively foreclosed by the recent amendments to the Premises Liability Act. Pub. Act 89—7, eff. March 9, 1995, amending 740 ILCS 130/2 (West 1994). Under that statute, the existence of an open and obvious danger is not simply a factor to be considered in assessing the parties' respective negligence. It has been explicitly linked to the duty of an owner or occupier of land with respect to invitees and licensees, as the majority argues it should be. Adopting the majority's view, the legislature has now stated specifically that if a condition on the premises is open and obvious, the owner or occupier has no duty to warn or to otherwise take steps to protect such entrants from the danger.

Even though the "open and obvious danger" doctrine remains fully viable as a legal principle, I do not believe that it should operate to bar plaintiffs' claims in these consolidated appeals. As the majority acknowledges, the existence of an open and obvious condition does not automatically mean that the owner or occupier of land owes no duty of care to its invitees or licensees. In an apparent effort to ameliorate the harshness of the doctrine, this court has declared that the scope of a defendant's duty must still be assessed in accordance with traditional tort principles, taking into account the particular circumstances that are before the court. *Ward*, 136 Ill. 2d at 147-48.

Whether a duty exists in a particular case involves consideration of whether the injury was reasonably foreseeable. That, however, is not the end of the inquiry. Because the existence of a duty turns, in large measure, on public policy factors, the court must also take into account the likelihood and severity of the injury, the

burden of guarding against the injury, and the consequences of placing that burden on the defendant. *Ward,* 136 Ill. 2d at 151; *Lee v. Chicago Transit Authority,* 152 Ill. 2d 432, 453 (1992). These considerations must be weighed against each other. Accordingly, a duty of reasonable care may be imposed on a defendant even though the danger of injury is remote where the gravity of the injury would be great and the burden of protecting against it slight. See *St. Paul Insurance Co. v. Estate of Venute,* 275 Ill. App. 3d 432, 437 (1995).

My colleagues assert that injuries of the kind sustained by the plaintiffs here were not reasonably foreseeable because Lake Michigan is a body of water, and water is included in the litany of supposedly "obvious" conditions that people are expected to protect themselves against. The problem with this approach is that it would effectively deny the existence of a duty whenever any body of water is involved. The particular circumstances of the case are rendered inconsequential, and the need for further application of the traditional duty analysis becomes moot. This is directly contrary to the teaching of *Ward* and its progeny.

If we look at the particular facts of the cases before us, as we must, the issue of foreseeability is considerably more difficult than the majority is willing to admit. In *Bucheleres,* No. 78760, the plaintiff was not new to the area around the Division Ledge where he broke his neck. He had been there scores of times in previous years, and had dived without incident. The area was, in fact, a popular gathering spot and was known by the Park District as a place where people dived into the lake from the seawall.

There were always risks to this diving, to be sure, but at the time of the plaintiff's accident the risks had changed in a way no person could reasonably have anticipated. The difference had nothing to do with

nature or the inherent characteristics of large bodies of water. Although Lake Michigan is subject to certain fluctuations in its water level, the culprit here was something different. The new danger arose because the Park District had dumped large amounts of sand into the lake bed, reducing the depth substantially, but did not alert potential divers that it had done so. Considering that the Park District was well aware that divers frequented this area, its actions were a formula for disaster. Serious injury was not merely foreseeable, it was inevitable.

Contrary to the majority's suggestion, imposing a duty of reasonable care on the Park District does not mean that it would be required to insure that no diving could ever take place near the seawall. The problem arose because the District artificially altered the depth without warning, and the problem could be solved simply by providing appropriate signage and additional patrols to give potential divers the warning they need. Compared with the likelihood and severity of the injuries, such a burden is modest. For the cost of treating and rehabilitating a single paraplegic, a troop of summer lifeguards could be hired, and the seawall area could literally be covered with the necessary warnings.

*Smith*, No. 78790, involves a different section of the Lake Michigan shoreline than *Bucheleres*, and no claim has been made that the lake bed there was artificially altered. While the case for foreseeability may therefore be less compelling, it is still substantial. The plaintiff in *Smith* was an experienced swimmer. He had dived from this same seawall many times without incident and believed the water to be very deep.

This was not an unreasonable assumption. Lake Michigan is, after all, a massive body of water. Reaching depths of up to 925 feet, it has been described as a freshwater ocean. While even oceans have their shallow

areas, the Park District had erected steel ladders next to the seawall, suggesting that it anticipated the presence of divers. In addition, lifeguards posted at the adjacent beach evidently made no effort to stop the plaintiff or others from diving on the day in question. Although the Park District contends that warning signs were posted, the signs must have been less than obvious, for the plaintiff claims that he never saw them.

Under these circumstances, I do not believe that we can say, as a matter of law, that a reasonable person would have appreciated the danger posed by this section of the shoreline and refrained from diving there. Indeed, the notion that people should have been expected to know better than to dive off the rocks is belied by the fact that people were doing it routinely and the Park District knew they were doing it.

As in *Bucheleres*, the burden of protecting such divers from danger is not necessarily substantial. If the Park District was unwilling to survey the known diving areas and make sure they were clear of submerged obstructions, it could at least provide warning signs that were effective and hire additional guards to help see that the signs were obeyed. The cost of such measures pales in comparison to the financial and social costs associated with spinal injuries sustained as a result of diving accidents. In *Smith,* as in *Bucheleres*, the Park District judgment of the appellate court should therefore be affirmed.