Hornbostel v. South Burlington School District, No. 1502-01 CnC  (Katz, J.,
Feb. 4, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been
reformatted from the original. The accuracy of the text and the
accompanying data included in the Vermont trial court opinion database is
not guaranteed.]

STATE OF VERMONT                                     SUPERIOR COURT
Chittenden County, ss.:                          Docket No. 1502-01 CnCv


HORNBOSTEL

v.

SOUTH BURLINGTON
SCHOOL DISTRICT


ENTRY


        Plaintiff commenced this negligence action by alleging that he was
injured when he "made a dive into a snowbank" at a school facility.  The
fact of the dive seems to be accepted by all parties.  The serious injury is
also accepted—quadriplegia.  The court has attempted to understand
better what was involved in the dive.  The only greater detail in the record
provided us comes from the deposition of another youngster, with whom
plaintiff was engaging in this form of play, James Andres:

        Q.  Who was playing in the snowbank?
        A.  Me and [plaintiff].

Q. All right. What were you doing?
A. Trying to do front flips off the top of it.
Q. Did you ever dive into the snowbank?
A. Yes.
Q. Head-first?
A. Yes.
Q. What was [plaintiff] doing?
A. The same thing. Except he didn't use his hands to break his fall.
Q. You, in other words, dove in using your hands?
A. Yeah. And he had his hands at his side.
Q. How many times did he do that?
A. I'm not sure. Probably around three.

(Andres Deposition, at 10–11). The foregoing was submitted by plaintiffs in response to defendant's motion for summary judgment, largely underlined in red, apparently to catch the court's attention.

In responding to the District's presently pending summary judgment motion, plaintiffs engage in a great deal of rebuttal, but largely fail to present a theory of liability of their own. So the court is left attempting to guess what that theory is, to see if admissible evidence supports it such that it should be submitted to a jury.

We certainly assume that plaintiff, as a fifteen year old student, was permitted to remain on school grounds to wait for his mother to pick him up. Part of that assumption is that he was an invitee on the premises and that reasonable care was due him. The snowbank was an artificial condition on the land, created as part of plowing snow from driveways and parking areas. Defendant asserts, and plaintiffs do not dispute, that the school district owed a "duty of ordinary care." 16 V.S.A. § 834. The district then argues that the presence of snowbanks did not breach this duty, because they pose no unreasonable risk and any risk from them is open and obvious.

No one has presented any evidence giving particular definition to the snowbank in question.  We must therefore assume that it is an unremarkable pile of snow, resulting from plows or front-end loaders clearing an area, and storing snow along one side.  Plaintiff seems to hint that there must have been some hidden object within the bank, which actually caused his injury.  We reject any such suggestion, unaccompanied by actual evidence.  The mere fact that he suffered a spinal cord injury does not show that there was any foreign object within the bank.  Snowbanks are not natural formations; they result from shoveling, plowing, snowblowing or piling.  They are not fluffy, fresh-fallen snow or even akin to a downy pile accumulated by the wind but are of a significantly denser genus.  They often contain ice or dense layers of melted and re-frozen snow.  This fact may be judicially noticed, Evid. Rule 201(b); see Jarvis v. Koss, 139 Vt. 254, 255 (1981) (approving judicial notice for matters of common knowledge such as the fact that pigs are rooting animals), as it is generally known in Vermont and other states.  See Artrip v. E.E. Berry Equipment Co., 397 S.E.2d 821, 824 (Va. 1990) (affirming a finding that snowbanks are an open and obvious condition).

Although an artificial condition on the land, snowbanks are certainly reasonable.  The alternatives to snowbanks would appear to be two: Don't plow, but let the snow become trampled, melted, re-frozen, and icy through May; or remove the snow from the site, as by loading it onto trucks.  The first alternative clearly poses a greater danger than do the snowbanks themselves; that is why Vermonters shovel and plow snow every winter.  See Sagar v. Warren Selectboard, 170 Vt. 167, 175 (1999) (citing to standards for snow removal dating from the 19th century).  The second alternative would clearly increase the costs of snow removal.  Creating a snowbank is essentially an activity without cost—once one removes the snow from the surface, piling it up nearby costs virtually nothing.  Each property owner finds an area on which snow can be piled, and remain sufficiently out of the way so as to permit ordinary activity to continue.  To require total removal may be feasible for a few highly developed urban locations, such as Burlington's Church Street mall, but it is an expense which the common law has never imposed on landowners as

part of reasonable or ordinary care.  Such a request would be analogous to Dooley v. Economy Store, Inc., 109 Vt. 138, 141–42 (1937).  In Dooley, the plaintiff slipped on a set of stairs in the defendant's store.  Id.  Plaintiff argued that a railing would have stopped her fall or made her injuries less serious.  Id.  The Court rejected this basis for negligence:

> The absence of a railing was apparent to all who had occasion to use the stairs. Moreover, there was no evidence fairly and reasonably tending to show that a railing would have prevented plaintiff's fall or lessened the force of it. The mere possibility or conjecture that it might have is insufficient to justify a finding that it would.

Id.  The same can be said for removing snowbanks.  The creation and maintenance of snowbanks are not unreasonable.  See Sagar, 170 Vt. at 175 (acknowledging the broad authority towns have to manage their affairs and duties including methods and manner of snow removal).  Their removal is not something a business, school, or government should be required to do, as a matter of law, based merely on the speculative theory that it might prevent certain accidents.

This leads to the next question, whether the defendant owed plaintiff a duty to either warn or make the snowbank safer from its open and obvious condition.  According to the First Restatement of Torts, a landowner owed no duty to his invitees to make the premises safe or to warn of dangers known or obvious to invitees.  Restatement (First) of Torts § 343 (1939).  The Second Restatement, however, softened this position by providing that when the allegedly dangerous condition is open and obvious, the landowner is not liable to invitees for harm from known or obvious dangers except where the landowner should anticipate harm in spite of the knowledge or obviousness.  Restatement (Second) of Torts § 343A (1965).  Essentially, this means that open and obvious dangers are not a *per se* bar to negligence that they were under the First Restatement.  Yet, the comments following § 343A make clear what duty anticipation means to a landowner.  The basis for liability under § 343A centers on a landowner's ability to 1) anticipate the injury and 2) the level of reasonable distraction plaintiff is likely to have around the danger.  Id. at

cmt. f.  In the examples given, liability adheres most often when the landowner creates distractions that blind the plaintiff to the danger, where the plaintiff is likely to immediately forget about the danger, or where the defendant forces the plaintiff to traverse the danger despite its easily cured nature.  Id.  In contrast, liability does not attach when the distraction is self-created by the plaintiff and unrelated to danger or where the danger can be safely traversed by the exercise of ordinary care.  Id. at cmt. e.  To take a brief step back, snowbanks, while an open and obvious condition, are not inherently dangerous.  They don't move.  Their main danger arises when people are forced to traverse them to get to a necessary destination.  Artrip, 397 S.E.2d at 824.  The bank at issue here was not in the middle of a necessary route; it did not collapse.  Cf. McCormack v. State, 150 Vt. 443, 446 (1988) (discussing the effects "sloughing off" from a snowbank can have on a road).  The plaintiff was not forced to traverse it or deal with it on any other basis than voluntary engagement.  This snowbank only became a source of danger because of the form of play which several teenage boys consciously and knowingly pursued upon it.

The duty imposed upon the district is to use ordinary care to guard against foreseeable risk.  While it is foreseeable that schoolchildren, including teenagers, will play upon a snowbank, the particular form of play apparently pursued by plaintiff is less foreseeable.  In fact, neither party has been able to produce evidence of such an activity being litigated before.  Jumping upon a snowbank, climbing up, sliding down, even finding or improvising sleds to speed up the sliding are all foreseeable.  But diving headfirst?  Keeping one's hands at one's side?  Even if foreseeable in a general sense, it smacks of reckless behavior that no duty can prevent.  Learned Hand concluded that the duty "to provide against resulting injuries is a function of three variables: (1) The probability that the [accident will occur]; (2) the gravity of the resulting injury, if [it] does; (3) the burden of adequate precautions."  United States v. Carroll Towing Co., 159 F.2d 169, 173 (2d Cir. 1947).  What is the probability that teenagers will dive into snowbanks with their hands at their side?  We must conclude that such dangerous if not suicidal conduct is highly

improbable. We have already discussed some of the cost of Judge Hand would call adequate precautions—not forming snowbanks in the first place. We have indicated a view that it is unreasonably high.

Another precaution might have been the employment of full-time parking lot supervisors, who would watch the teenagers, until they left the school property. The school district would argue that such would not have prevented this accident, as plaintiff had left school grounds before he returned. Plaintiffs apparently counter this argument by citing Adam's deposition testimony that he was merely sitting on the front steps of a neighboring house, before returning. This does suggest that he left school grounds. But whether he did or did not leave is irrelevant to determination of the district's duty. The question is essentially whether the district had a duty to warn plaintiff not dive head-first into a snowbank on its property. Again, we find an analogous situation enlightening and persuasive. In Bachelere v. Chicago Park District, the Illinois Supreme Court considered a consolidated group of park users (invitees) who sued after sustaining severe injuries from diving off concrete seawalls into shallow parts of Lake Michigan. Bachelere v. Chicago Park District, 665 N.E.2d 826, 828 (Ill. 1996). The Illinois Court found that diving into a natural body of unknown depth was an open and obvious condition and that even the young and immature could reasonably foresee this danger. Id. at 832, 836. Such accidents could be anticipated in a general sense, but the Park, they concluded, should be able to rely on individuals to appreciate the dangers. Id. at 837. The Illinois Court concluded that it was neither practical nor economically feasible to mark the areas around the lake or provide lifeguards to warn divers. Id.

In the present case, it is not practical or economically feasible to require the district to provide monitors on the school grounds to warn students from in engaging in obviously dangerous activity. Even a young child should reasonably foresee the danger of diving into a snowbank, which, like the water of Lake Michigan, is of unknown depth, hardness, and contents. While we are sympathetic to the tragic situation of the

plaintiff, we cannot conclude that the district had a duty to warn him about the obvious danger of diving headfirst, with arms at his side, into a snowbank.  Furthermore, unlike <u>Bacheleres</u>, this activity was unique.  In <u>Bacheleres</u>, the Illinois Court considered the activity's pervasiveness to be important.  <u>Id</u>. at 838 (noting a metal ladder at the site of one accident, which may have signaled the site's expediency for diving). Indeed, the plaintiffs both claimed to have dove in the spots on previous occasions.  <u>Id</u>. at 829.  Nevertheless, the Illinois Court found that such prior activity did not vitiate the obvious nature of the danger and create a duty in the Park to take any further steps to warn about such dangerous activities.  <u>Id</u>. at 836.  Likewise, the district did not have a duty to warn the plaintiff off the snowbank because the danger was obvious.  Moreover, plaintiff's behavior was reckless and apparently isolated enough to make this an aberrant event, which was beyond anything but the most general foreseeability, let alone duty.  As a result, the district had no duty to warn plaintiff about diving into the snowbank.

Without a duty, there can be no breach and therefore no case for negligence.  The purpose of summary judgment is to "smoke out" the facts to see if anything remains to be tried.  <u>Donnelly v. Guion</u>, 467 F.2d 290, 293 (2d Cir. 1972).  Even in the most generous light, plaintiff fails to show demonstrate a legal cause to hold the district liable for his injuries.  Since plaintiff has failed to come forward with admissible evidence showing a cause of action, his complaint cannot stand as a matter of law.

Based on the foregoing, defendant's motion for summary judgment is granted.  The case is dismissed.

Dated at Burlington, Vermont, _____, 2004.

_____
Judge