RONALD G. HENSON *et al.*, as Independent Co-Adm'rs of the Estate of Rebecca Lynn Henson, a Minor, Now Deceased, Plaintiffs-Appellants and Cross-Appellees, v. DANNY L. ZIEGLER *et al.*, Defendants-Appellees and Cross-Appellants.[1]

Third District   No. 3—94—0324

Opinion filed February 10, 1995.

_____

[1]See 279 Ill. App. 3d 1025, for decision on remand from the Illinois Supreme Court.

440

Patrick J. Murphy, of Law Offices of Kevin R. Galley, of Lacon, for appellants.

Daniel Johns, of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

The plaintiffs, Ronald and Alice Henson, brought this wrongful death action following the drowning of six-year-old Rebecca Henson in an aboveground swimming pool owned by the defendants, Danny and Kathie Ziegler. The plaintiffs alleged that the defendants failed to take reasonable safety precautions to prevent Rebecca from gaining access to the pool. The circuit court of Marshall County granted the defendants' motion for summary judgment, finding that they owed no duty to Rebecca because the pool was an obvious danger and Rebecca was expected to appreciate and avoid the risks associated with the pool. We hold that a swimming pool is not an obvious danger to a six-year-old and that the defendants did owe Rebecca a duty of reasonable care. Therefore, we reverse.

The plaintiffs and defendants were next-door neighbors in Henry, Illinois. During the summer of 1991 the defendants maintained an aboveground swimming pool in their backyard. Attached to the pool was a wooden deck that could be reached by means of an aluminum step-ladder. The ladder could be let down to allow access to the deck or locked into an upright position to deny access. Although other neighborhood children were known to swim in the pool, Rebecca had never been invited to do so.

During the early morning hours of July 7, 1991, the plaintiffs realized that Rebecca was missing from their residence. A search of the neighborhood was conducted, and Rebecca's naked body was found next door in the defendants' pool. The panties Rebecca had been wearing were on the pool's deck; the step-ladder was in the down position. Defendant Danny Ziegler admitted in his deposition that he

had left the ladder in the down position on the afternoon of July 6, 1991, and had failed to return it to the locked upright position prior to Rebecca's death. There was no evidence of foul play.

The sole issue raised by this appeal is whether the defendants owed a duty to Rebecca to protect her from the risk of harm posed by their swimming pool.

The determination of whether a duty exists is an issue of law to be determined by the court. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387.) We thus review the circuit court's ruling under a *de novo* standard. The factors to consider in deciding whether a duty should be imposed in a given case are the reasonable foreseeability of the injury, the likelihood of the injury, the possible seriousness of the injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. *Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, 566 N.E.2d 239.

A landowner is generally under no duty to keep his premises in a safe condition for the benefit of those who enter without permission. (*Briney v. Illinois Central R.R. Co.* (1948), 401 Ill. 181, 81 N.E.2d 866.) In the case of young children, however, an exception applies. Where a landowner knows or should know that young children frequent the vicinity of a dangerous condition on the premises and the condition is likely to cause children injury because they are too immature to appreciate the risk involved, then the landowner has a duty to protect children from the dangerous condition if the expense of doing so is slight compared to the risk of injury. *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836; see also Restatement (Second) of Torts § 339 (1965).

The exception stated in *Kahn* is a limited one which seeks to protect young children only from dangers they cannot appreciate. Thus the supreme court has stated, "the *Kahn* principle should not be construed to impose a duty on owners and occupiers to remedy conditions the obvious risks of which children generally would be expected to appreciate and avoid." (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326, 383 N.E.2d 177, 180.) It is reasoned that the landowner, in the exercise of reasonable care, would not foresee injury to children resulting from obvious dangers. *Cope v. Doe* (1984), 102 Ill. 2d 278, 464 N.E.2d 1023.

Our initial task, then, is to decide whether a swimming pool is an obvious danger the risks of which a six-year-old can be expected to appreciate and avoid. The defendants refer us to several cases in which the courts have applied the obvious danger rule to other bodies of water. (See *Cope v. Doe* (1984), 102 Ill. 2d 278, 464 N.E.2d 1023

(retention pond); *Prince v. Wolf* (1981), 93 Ill. App. 3d 505, 417 N.E.2d 679 (retention pond); *Weber v. Village of Carol Stream* (1984), 129 Ill. App. 3d 628, 472 N.E.2d 1203 (ice-covered retention pond); *Stevens v. Riley* (1991), 219 Ill. App. 3d 823, 580 N.E.2d 160 (creek); *Wingate v. Camelot Swim Club, Inc.* (1990), 193 Ill. App. 3d 963, 550 N.E.2d 665 (man-made duck pond).) The defendants argue that a swimming pool poses the same risk of drowning as the bodies of water in the cases cited and should therefore be considered an obvious danger.

The question of obviousness, however, does not hinge on whether a swimming pool does in fact pose the same risks as these other bodies of water. Instead, it hinges on whether a six-year-old perceives that a pool poses the same risks. Children's experiences and judgment, as well as their senses, contribute to the determination of whether a danger is obvious. Children learn at an early age that their parents will not encourage them to participate in potentially dangerous activities or to enter upon potentially dangerous premises. Parents do, however, encourage children to enter swimming pools and to use them as a source of desirable, even coveted, recreation. By contrast, parents typically warn their children to avoid other bodies of water which are not intended for swimming. Thus, in all likelihood children do not associate pools with danger. The result is that while six-year-olds may appreciate the danger posed by a retention pond, creek, lake or river, they may not appreciate the dangers associated with swimming pools. Consequently, we hold that an aboveground swimming pool cannot be considered an obvious danger to six-year-old children.

We next address the question of whether a swimming pool presents a reasonably foreseeable risk of injury in cases where, as here, young children are known to frequent the pool's vicinity. We need resort only to experience and common sense to find that an unattended child risks serious injury by playing in a swimming pool. Accordingly, we find that swimming pools do present a reasonably foreseeable risk of injury to young children.

We must also consider the magnitude of the burden of guarding against the injury and the consequence of placing that burden on the defendant. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223.) This part of the analysis is also required under *Kahn*, because *Kahn*'s limited exception applies only where the expense of remedying a dangerous condition is slight compared to the risk of injury. See *Kahn*, 5 Ill. 2d 614, 126 N.E.2d 836.

The burden of protecting young children from swimming pool injuries is relatively slight. The burden consists of the purchase and maintenance of adequate safety equipment. Although the installa-

tion of safety equipment is an expense, it is a slight one compared to both the cost of the swimming pool and the risk of serious harm present where no safety equipment is in place. Moreover, most pool owners install safety devices as a matter of course when they decide to purchase a pool, as the defendants did in this case. Therefore, the imposition of this burden on pool owners would not, in most cases, add a significant cost to pool ownership.

The most significant consequence of placing this burden on pool owners would be that some persons might choose to forego the benefits of pool ownership rather than assume the risk of tort liability and the expense of insuring against that risk. While we do not take lightly the possible loss of recreational resources in our communities, this consequence must be balanced against the social costs stemming from deaths and serious injuries to children from swimming pool accidents. (See Restatement (Second) of Torts, § 339 Comment n (1965) (balancing risk to children with utility of dangerous condition).) Although the human costs associated with such accidents must be borne by the victims and their relatives, we think the economic losses should be borne by swimming pool owners, who are in the best position to protect against them.

In sum, we find that the risk of a child drowning in an aboveground pool is reasonably foreseeable, that an injury resulting from the risk (whether death or disability) is likely and that the severity of the injury may be great. We also find that the burden of protecting against the risk is slight and that placing the burden on pool owners will further public policy. Therefore, we hold that swimming pool owners have a duty to take reasonable steps to protect young children from pool-related injuries.

The supreme court has stated that "a court's determination of duty reflects the policy and social requirements of the time and community." (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 526-27, 513 N.E.2d 387, 396.) Our communities generally favor the requirement that swimming pool owners must take safety precautions to protect young children from injury. This is evident from the fact that several municipalities have for years required swimming pool owners to install fences and other safety mechanisms. (See, *e.g.*, Ottawa, Ill., Building Code § 23.12 (1978); Joliet, Ill., Code § 8—482 (1981); Peoria, Ill., Ordinance No. 625.9 (1987).) Other municipalities have more recently followed suit. (See, *e.g.*, Henry, Ill., Code § 17—31(gg) (Nov. 1991); Momence, Ill., Ordinance 4—2—7 (May 1992).) Our decision therefore comports with the prevailing trend to favor the safety of children over a landowner's freedom in the use and enjoyment of his property.

The defendants also raise the argument that they are immune from liability under the Illinois Recreational Use of Land and Water Areas Act (745 ILCS 65/1 (West 1992).) We recently held that the Act does not extend to cases where the landowner does not open his land to the public. (*Snyder v. Olmstead* (1994), 261 Ill. App. 3d 986, 634 N.E.2d 756.) The defendants acknowledge that they did not open their property to the public, but urge this court to reconsider our holding in *Snyder*. We decline to do so and hold that the Act does not apply under the facts of this case.

For the foregoing reasons, the judgment of the circuit court of Marshall County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

STOUDER, P.J., and LYTTON, J., concur.