1-95-3738)
1-95-3787) Cons.

MAHMOUD MOSTAFA, as Special ) 
Administrator of the Estate of ADEL ) 
MOSTAFA, deceased, and MAHMOUD MOSTAFA, ) 
his father, FATIMAELZAHRAA MOSTAFA, his ) Appeal from the 
mother, and AHMEDAMRO MOSTAFA, ) Circuit Court of 
GAMALELDIN MOSTAFA, and MOHAMMEDALI ) Cook County. 
MOSTAFA, his brothers, ) 
 )
 Plaintiffs-Appellants, )
 )
 v. )
 ) 
CITY OF HICKORY HILLS, HICKORY ) 
HILLS PARK DISTRICT, AMERICAN NATIONAL )
BANK AND TRUST COMPANY, Trust No. )
114112-04, dated July 30, 1991, and )
ASGHAR MOHSIN, beneficiary of said ) 
trust, )
 ) 
 Defendants-Appellees. ) 
 )
__________________________________________)
 )
NAIMAH SALAMAH, as Special ) 
Administrator of the Estate of AMGAD ) 
SALAMAH, deceased, ) 
 )
 Plaintiff-Appellant, )
 )
 v. )
 ) 
CITY OF HICKORY HILLS and HICKORY ) 
HILLS PARK DISTRICT, AMERICAN NATIONAL ) 
BANK AND TRUST COMPANY, Trust No. ) Honorable 

114112-04, dated July 30, 1991, and ) Jennifer Duncan-
Brice,
ASGHAR MOHSIN, beneficiary of said ) Judge Presiding.
trust, ) 
 ) 
 Defendants-Appellees. ) 

 PRESIDING JUSTICE HARTMAN delivered the opinion of the court:
 Plaintiffs' decedents, Adel Mostafa, age two, and Amgad
Salamah, age three, fell into a manmade lagoon in a public park
near a playground and drowned. Plaintiffs filed suit against the
City of Hickory Hills (City), the Hickory Hills Park District (Park
District), American National Bank and Trust Company (American
National Bank), which held title to their apartment building in
trust, and Asghar Mohsin, the beneficiary of that trust. The
circuit court granted defendants' section 2-619(a)(9) (735 ILCS
5/2-619(a)(9) (West 1994)) (section 2-619(a)(9)) motions to
dismiss. On appeal, plaintiffs argue that the City and the Park
District each owed a duty under both the common law and the Local
Governmental and Governmental Employees Tort Immunity Act (Tort
Immunity Act) (745 ILCS 10/3-101.1 et seq. (West 1992)) to prevent
or warn against the risk of young children falling into the lagoon,
and their failure to do so was negligent as well as willful and
wanton. Plaintiff Mahmoud Mostafa further argues that American
National Bank and Mohsin owed a duty to install locks to prevent
children from leaving the apartment building, and to protect
children from the risk of danger posed by the lagoon in the
neighboring park.
 The two causes of action in this consolidated case arise from
the same incident. Plaintiffs' decedents lived with their families
in the same apartment building in a complex located in Hickory
Hills. Situated directly across the street from that apartment
complex was publicly accessible Martin Park, which contained a
small playground. A sign in the playground stated "PLAYGROUND NOT
SUPERVISED RECOMMENDED AGES 5-12." The manmade lagoon, assertedly 
filled with murky water, was located forty-five feet away from the
playground. 
 On November 9, 1993, the two boys left their apartments,
allegedly without the knowledge of their families, crossed the
street, entered Martin Park, played in the playground until they
allegedly spotted a flock of wild geese drinking water at the edge
of the lagoon, ran toward the geese, began to chase them, and
slipped into the lagoon and drowned. 
 The families of Amgad and Adel filed separate complaints. 
Adel's father, Mahmoud Mostafa, filed a nine-count wrongful death
action against the City, the Park District, the Harris Trust &
Savings Bank (Harris Bank), which then held title to the apartment
complex in trust, and Asghar Mohsin, the beneficiary of that trust. 
The first three counts stated claims against the City and the Park
District, alleging both common law negligence and a violation of
section 3-102(a) of the Tort Immunity Act, 745 ILCS 10/3-102(a)
(West 1994) (Section 3-102(a)). Mostafa alleged that defendants
breached their duty to prevent children from drowning in the
lagoon. Counts four, five and six stated a claim against Harris
Bank for failing to repair a lock in plaintiff's apartment
building, which would have prevented the boys from exiting the
building. Counts seven, eight and nine alleged that the City and
the Park District acted willfully and wantonly in constructing a
lagoon so close to a children's playground. 
 Amgad's mother, Naimah Salamah, also filed a three-count
wrongful death complaint against the City and the Park District,
alleging both negligent and willful and wanton conduct. Salamah
amended her complaint to include allegations against Harris Bank
and Mohsin that were identical to allegations in Mostafa's
complaint, but later voluntarily dismissed the two parties.
 The two claims were consolidated. After the property
apparently was transferred to a new trust and trustee, Mostafa
amended his complaint to state a claim against American National
Bank instead of Harris Bank. 
 In February 1995, the Park District moved under section 2-619
to dismiss both complaints, asserting that it owed no duty to
protect the young boys from the apparent danger of the lagoon,
erect a fence around the lagoon, or erect a sign stating the depth
of the water. In addition, the Park District raised as defenses
sections 2-109, 2-201, 3-103, and 3-108(a) of the Tort Immunity
Act, arguing that these provisions immunized it from being held
liable even if the court found it owed a duty. 745 ILCS 10/2-109,
2-201, 3-103, 3-108(a) (West 1994). 
 The Park District submitted the affidavit of its executive
director, Cynthia Neal, in support of the motion, who swore that
the Park District owned and controlled Martin Park, no one before
had drowned in the lagoon since it was built in 1979-80, and signs
on the property warned against allowing children to play
unsupervised. An exhibit attached to the affidavit included a
drawing of Martin Park, which contained a football field, two
softball fields, a playground, and the lagoon.
 Salamah countered that the Park District had a common law duty
to remedy the unreasonably dangerous condition it created when it
built the lagoon, and disputed the assertion that section 3-103(a)
of the Tort Immunity Act immunized defendant from liability. She
contended that the statute imposed liability on Park District for
creating a dangerous condition. 
 Mostafa's response raised identical arguments relating to the
Park District's duty to repair the dangerous condition. In
addition, Mostafa emphasized the young age of decedents and their
inability to appreciate the dangerous nature of the lagoon. 
Mostafa claimed the conduct was willful and wanton and that,
because the Park District failed to allege it had no liability
insurance, it could not seek immunity based on its lack of
insurance. 
 Defendant Mohsin also moved to dismiss Mostafa's claim against
him, arguing that he had no duty to protect plaintiffs' decedents
from dangers existing on neighboring property, or to protect a
child from the obvious dangers of water. He further claimed he had
no duty to install locks that would prevent people from leaving
apartment buildings. 
 The circuit court granted the Park District's motion to
dismiss, finding that Illinois law did not impose a duty on the
Park District because the dangerous nature of the lagoon was open
and obvious to the children. The court granted plaintiffs leave to
file amended complaints, which they did. Plaintiffs' separate
second amended complaints contained substantially similar
allegations. The Park District and Mohsin again successfully moved
to dismiss the two complaints. The City also successfully moved to
dismiss both complaints on the basis that it did not own, possess,
maintain, or control Martin Park. 
 A section 2-619 motion to dismiss admits all well-pleaded
facts in a complaint, but does not admit conclusions of law or
conclusions of fact unsupported by specific allegations. The
motion should be granted if, construing all documents submitted in
support of the motion in the light most favorable to the nonmoving
party, there exist no disputed issues of fact. 735 ILCS 5/2-619
(West 1994); Jackson v. Moreno, 278 Ill. App. 3d 503, 663 N.E.2d 27
(1996). Appellate review of a dismissal pursuant to section 2-619
is de novo. Lawson v. City of Chicago, 278 Ill. App. 3d 628, 634,
662 N.E.2d 1377 (1996); Jackson, 278 Ill. App. 3d at 506. 
 I
 The parties first dispute whether plaintiffs stated a cause of
action for negligence against the Park District. A negligence
claim must consist of facts demonstrating that defendant owed
plaintiff a duty, which defendant breached, and plaintiff suffered
injuries or damages proximately caused by the breach. Rowe v.
State Bank of Lombard, 125 Ill. 2d 203, 215, 531 N.E.2d 1358
(1988); Pelham v. Griesheimer, 92 Ill. 2d 13, 18, 440 N.E.2d 96
(1982). The existence of duty is a question of law that must be
decided by the court. Sisk v. Williamson County, 167 Ill. 2d 343,
346, 657 N.E.2d 903 (1995); Ward v. K Mart Corp., 136 Ill. 2d 132,
140, 554 N.E.2d 223 (1990).
 A
 Customary rules of ordinary negligence govern the liability of
owners and occupiers of land upon which a child is injured. Mt.
Zion State Bank & Trust v. Consolidated Communications, Inc., 169
Ill. 2d 110, 116, 660 N.E.2d 863 (1995) (Mt. Zion); Corcoran v.
Village of Libertyville, 73 Ill. 2d 316, 325, 383 N.E.2d 177
(1978); Kahn v. James Burton Co., 5 Ill. 2d 614, 624, 126 N.E.2d
836 (1955). Owners and occupiers can be liable for injuries
sustained by children on the land (Corcoran, 73 Ill. 2d at 325;
Kahn, 5 Ill. 2d at 625); however, if the dangerous condition on the
land poses an obvious risk of danger that children would be
expected to appreciate and avoid, the owner is under no duty to
remedy the condition. Cope v. Doe, 102 Ill. 2d 278, 286, 464
N.E.2d 1023 (1984) (Cope). 
 Specifically, owners or occupiers of land generally do not owe
a duty to protect children from falling into bodies of water and
drowning or potentially drowning. Mt. Zion, 169 Ill. 2d at 121;
Cope, 102 Ill. 2d at 289; Stevens v. Riley, 219 Ill. App. 3d 823,
830, 580 N.E.2d 160 (1991). In Mt. Zion, where a six-year-old boy
almost drowned after falling into a swimming pool, the court found
the pool to be an obvious danger, which defendant could reasonably
expect plaintiff to appreciate and avoid, and which defendant had
no duty to protect against. 169 Ill. 2d at 120-21. The supreme
court summarized the issue as follows:
 "The issue in cases involving obvious
 dangers, like fire, water or height, is not
 whether the child does in fact understand, but
 rather what the possessor may reasonably
 expect of him. (See W. Keeton, Prosser &
 Keeton on Torts  59, at 407 (5th ed. 1984); 2
 M. Polelle & B. Ottley, Illinois Tort Law 
 16.11 (2d ed. 1994).) The test is an
 objective one, grounded partially in the
 notion that parents bear the primary
 responsibility for the safety of their
 children. Stated again, where a child is
 permitted to be at large, beyond the watchful
 eye of his parent, it is reasonable to expect
 that that child can appreciate certain
 particular dangers. See Booth v. Goodyear
 Tire & Rubber Co. (1992), 224 Ill. App. 3d
 720, 725 (subjective understanding not
 considered when risk is obvious); see also
 Salinas v. Chicago Park District (1989), 189
 Ill. App. 3d 55." (Emphasis in original.) 
 169 Ill. 2d at 126-27.
 Similarly, in Cope, plaintiff's decedent, a seven-year-old
boy, fell through ice that had gathered on a retention pond, which
was partially frozen. The court held that despite the presence of
the ice, the pond was a regular body of water that posed an obvious
risk of drowning. 102 Ill. 2d at 289. Likewise, in Stevens, a
seventeen-month-old child fell in a retention pond, which the court
found to be an obvious risk, although prairie grass partially
obscured it from view. The court acknowledged that a toddler might
not be expected to avoid the danger of drowning, but explained that
an unattended child old enough to be allowed outside by its parents
could be expected by the landowner to appreciate and avoid the
danger. 219 Ill. App. 3d at 831.
 Based on these decisions, in the present case the Park
District owed no common law duty to protect decedents from the
lagoon. 
 Although plaintiffs cite Henson v. Ziegler, 269 Ill. App. 3d
439, 646 N.E.2d 643 (1995), to support their position that
defendants owe a duty to prevent plaintiffs' decedent from
drowning, Henson actually supports the opposite view. The court
initially held that a swimming pool did not present an obvious
danger to a young child (269 Ill. App. 3d at 442), but subsequently
abandoned its previous holding in light of the Mt. Zion decision. 
279 Ill. App. 3d 1025, 1026, 665 N.E.2d 877 (1996).
 Under some circumstances, owners and occupiers may have a duty
to protect against open and obvious dangers if it is reasonably
foreseeable that a party might become distracted and fail to
appreciate the dangerous condition despite the exercise of
reasonable care. Ward, 136 Ill. 2d at 157. The Ward court
explained that if the risk of harm is reasonably foreseeable,
despite the obvious potential for harm, owners and occupiers have
a duty to prevent or warn against that risk. 136 Ill. 2d at 151. 

 Plaintiffs contend that just as bulky packages blocked
plaintiff's view in Ward, preventing him from seeing a large
concrete post (136 Ill. 2d at 154), in the present case the murky
water in the lagoon prevented decedents from ascertaining the depth
of the water. The Ward decision, however, did not state that all
obvious risks are reasonably foreseeable. See Yacoub v. Chicago
Park District, 248 Ill. App. 3d 958, 962, 618 N.E.2d 685 (1993)
(noting that the Ward decision did not "sound a death knell for the
open and obvious rule"). The Ward court acknowledged that even
when children are on the premises, an owner or occupier has no duty
to protect against blatantly obvious dangers, and cited Cope, where
a child drowned in an ice-covered retention pond, as an example of
a blatantly obvious danger. Ward, 136 Ill. 2d at 148 (citing Cope,
102 Ill. 2d at 286). The decedent in Cope was expected to
appreciate the danger of the pond despite the fact that he could
not determine the thickness of the ice or the depth of the water
under the ice. Likewise, defendants in the present case could have
regarded the nature of the lagoon as an open and obvious danger
despite the fact that decedents might not have been able to see
through the water. Yacoub, 248 Ill. App. 3d at 963.
 In Bucheleres v. Chicago Park District, 171 Ill. 2d 435, 452,
665 N.E.2d 826, 834 (1996), the supreme court reexamined the Ward
decision, and explained that a duty arose only when a party
foreseeably might become distracted or forgetful of the existence
of the dangerous condition, and when defendant easily could warn
against the risk of harm created by the condition. The Bucheleres
court found that plaintiffs, who were injured after diving into a
lake, offered no evidence that they were distracted or forgetful of
the lake's existence. In fact, "[n]othing concealed or obscured
the existence of the lake." 171 Ill. 2d at 453. 
 Analogously, in the present case, no object or condition
concealed the presence of the lagoon. The Park District therefore
owed no common law duty to protect decedents from any dangers
associated with the lagoon, as a matter of law. 
 The circuit court did not err in dismissing the portions of
plaintiffs' complaints alleging common law negligence against the
Park District.
 B
 Plaintiffs next allege that the City also breached a duty by
failing to alleviate the dangerous nature of the lagoon. The City
did not file an appellee's brief; nonetheless, this court elects to
decide the merits of plaintiffs' claim against it. First Capitol
Mortgage Corp. v. Talandis Construction Corp., 63 Ill. 2d 128, 133, 
345 N.E.2d 493 (1976).
 Both the City and the Park District attached affidavits to
their motions to dismiss, signed by administrators who swore that
the Park District solely owned, controlled, operated and maintained
Martin Park. Plaintiffs never submitted countervailing
counteraffidavits or other documents. We must accept defendants'
affidavits as true. Beattie v. Lindelof, 262 Ill. App. 3d 372,
382, 633 N.E.2d 1227 (1994).
 The City is not an owner or occupier of Martin Park and
therefore owed no duty to plaintiffs in that capacity. Plaintiffs
do not raise an alternative theory under which the City might owe
a duty, and therefore cannot be liable to plaintiffs. The circuit
court correctly dismissed plaintiffs' allegations of negligence
against the City.
 II
 Plaintiffs assert that even if the common law does not impose
a duty on the Park District, section 3-102(a) of the Tort Immunity
Act does. Under section 3-102(a), "a local public entity has the
duty to exercise ordinary care to maintain its property in a
reasonably safe condition for *** people whom the entity intended
and permitted to use the property in a manner in which and at such
times as it was reasonably foreseeable that it would be used." The
Act does not impose any new duties on municipalities, but simply
restates and codifies common law principles. Wagner v. City of
Chicago, 166 Ill. 2d 144, 150, 651 N.E.2d 1120 (1995); Santelli v.
City of Chicago, 222 Ill. App. 3d 862, 867, 584 N.E.2d 456 (1991). 

 In order for a public entity to owe a duty under section 3-
102(a) to protect a party from unreasonably dangerous conditions
existing on its property, that party must be both a permitted and
intended user of the property. Sisk v. Williamson County, 167 Ill.
2d 343, 347, 657 N.E.2d 903 (1995); Vaughn v. City of West
Frankfort, 166 Ill. 2d 155, 160, 651 N.E.2d 1115 (1995). See also
Wagner v. City of Chicago, 166 Ill. 2d 144, 154-55, 651 N.E.2d 1120
(1995). 
 The Vaughn and Sisk decisions involved pedestrians injured by
defects found in public streets. The Vaughn court noted that
although city ordinances might permit pedestrians to walk on the
street, pedestrians are not intended users of city streets. 
Interpreting section 3-102(a), the court concluded that the statute
imposed a duty only if parties were "both permitted and intended"
users of the street. (Emphasis in original.) Defendants therefore
did not owe plaintiffs a duty under the statute. Vaughn, 166 Ill.
2d at 160. The Sisk court applied the same rule of law, holding
that defendant owed no duty to protect plaintiff from injuries he
suffered on a public bridge because as a pedestrian, plaintiff was
not an intended user of the bridge. Sisk, 167 Ill. 2d at 348-49. 
Accord Khalil v. City of Chicago, 283 Ill. App. 3d 161, 164, 669
N.E.2d 1189 (1996) (holding that because pedestrians were not
intended users of an alley, defendant owed pedestrians no duty to
maintain the alley in a reasonably safe condition under section 3-
102(a)).
 In this case, plaintiffs' decedents, under no supervision,
were permitted but not intended users of the property. Although
the Park District constructed a public park that was open to all
members of the public, a sign near the playground explicitly
prescribed that children be at least five years old before using
the playground, and that all children be supervised. Plaintiffs'
decedents were much younger than the recommended age, and entered
the playground alone. Plaintiffs introduced no evidence to the
contrary. The record indicates that the Park District did not
intend for the lagoon to serve as a recreational body of water,
such as a swimming pool or lake. The Park District owed no duty
under Section 3-102(a) to protect plaintiffs' decedents from the
lagoon.
 III
 Plaintiffs cite sections 3-103(a), 3-104, and 3-109(c)(1) of
the Tort Immunity Act as imposing liability for the lagoon's
defective design, and requiring the Park District to warn of a
dangerous condition. 
 Defendants owe no duty under sections 3-103 or 3-104 of the
Tort Immunity Act in the absence of a duty owed under section 3-
102. Curtis v. County of Cook, 98 Ill. 2d 158, 165, 456 N.E.2d 116
(1983); Thompson v. Cook County Forest Preserve District, 231 Ill.
App. 3d 88, 93, 595 N.E.2d 1254 (1992). Furthermore, plaintiffs
cite no authority in support of their argument that section 3-109
imposed a duty on the Park District to warn of a dangerous
condition. The failure to cite authority in support of their
section 3-109 argument constitutes a waiver of that argument on
appeal. Wasleff v. Dever, 194 Ill. App. 3d 147, 550 N.E.2d 1132
(1990); 134 Ill. 2d R. 341(e)(7). 
 The Park District contends that even if it owed plaintiffs'
decedents a duty and acted negligently, sections 2-201, 3-103(a),
and 3-108 of the Tort Immunity Act immunize it against liability
and bar plaintiffs' claims. Because the Park District owes no duty
to plaintiffs under either the common law or the Tort Immunity Act,
the issue of whether various provisions of the Tort Immunity Act
provide the Park District with immunity need not be decided.
 IV
 Three counts of the Mostafa complaint and one count of the
Salamah complaint allege that the Park District's conduct was
willful and wanton, in that the playground was constructed next to
the lagoon, a gate to the park was left unlocked, Park District
failed to post warning signs, and it failed to ensure that the
water in the lagoon was of a safer, shallower depth. 
 Willful and wanton conduct may be intentional or the result of
a reckless disregard for the safety of others. The latter may be
established by showing either knowledge of impending danger,
combined with a failure to exercise ordinary care to prevent the
danger, or a failure to discover the danger through recklessness or
carelessness even though it could have been discovered through the
exercise of ordinary care. Ziarko v. Soo Line Railroad Co., 161
Ill. 2d 267, 273, 641 N.E.2d 402 (1994). A person is guilty of
willful and wanton conduct when he ignores known or plainly
observable dangerous conditions, and does something that will
naturally and probably result in injury to another. Glover v. City
of Chicago, 106 Ill. App. 3d 1066, 1075, 436 N.E.2d 623 (1982).
 Generally, the trier of fact decides the question of whether
defendant's conduct is willful and wanton. Brown v. Chicago Park
District, 220 Ill. App. 3d 940, 943, 581 N.E.2d 355 (1991); Glover,
106 Ill. App. 3d at 1075. A reviewing court may resolve that
issue, however, if the evidence so overwhelmingly favors one party
that a contrary determination cannot stand. Brown, 220 Ill. App.
3d at 943.
 If plaintiffs cannot establish the existence of a common law
duty as part of their negligence claims, then their claims for
willful and wanton conduct also must fail. Spencer v. City of
Chicago, 192 Ill. App. 3d 150, 548 N.E.2d 601 (1989). In Spencer,
plaintiff's three-year-old son wandered away from his house,
crossed the street, walked to a local park and played near a
lagoon, where he fell into the water and drowned. 192 Ill. App. 3d
at 151. The Spencer court held that because defendants owed no
duty to protect against the danger of falling into water,
plaintiffs could not establish a claim for willful and wanton
conduct. 192 Ill. App. 3d at 156. Here, the Park District owed no
duty to prevent the drownings, and plaintiffs' claim for willful
and wanton conduct cannot stand.
 Plaintiffs assert the Park District nevertheless may be liable
for willful and wanton conduct because the lagoon contained a
defective condition, specifically water that was not shallow enough
and that was located too close to a playground. In Carter v. New
Trier East High School, 272 Ill. App. 3d 551, 557, 650 N.E.2d 657
(1995), the court held that a defendant is guilty of willful and
wanton conduct if it not only disregards a defective condition, but
also fails to inspect the premises and respond to complaints, even
though it knows others have been injured by the condition. The
Carter decision is distinguishable from the present case. In
Carter, plaintiff alleged that defendant knew of the dangerous
condition of the property for a long time and failed to take any
action. Plaintiff further stated that defendant obtained this
knowledge through numerous complaints and reports of injuries
resulting from the dangerous condition. In contrast, in the
present case, plaintiffs do not allege that anyone complained about
the lagoon. Furthermore, plaintiffs do not claim that any
accidents occurred at the lagoon. In fact, the Park District
introduced evidence proving the opposite, that it could not have
known the lagoon was dangerous because no one had ever been injured
there, and no one had ever complained about it.